**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

Chief Justice:
Clifford W. Taylor

Justices:
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Maura D. Corrigan
Robert P. Young, Jr.
Stephen J. Markman

FILED MAY 31, 2006

MICHAEL GRIMES and TAMARA GRIMES,

    Plaintiffs-Appellees,

v                             No. 127901

MICHIGAN DEPARTMENT OF TRANSPORTATION,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

YOUNG, J.

We granted leave to appeal to consider whether the shoulder is part of the "improved portion of the highway designed for vehicular travel" for the purpose of the highway exception to governmental immunity. We conclude that a shoulder is not within the exception because it is not "designed for vehicular travel."

In reaching this conclusion, we overrule the holding in our earlier decision in *Gregg v State Hwy Dep't* that a shoulder is "designed for vehicular travel."[1] *Gregg* subsequently has been relied on by lower courts for the proposition that

---

[1] 435 Mich 307; 458 NW2d 619 (1990).

every shoulder is "designed for vehicular travel." As we will discuss, we find no support within *Gregg*, considering its internal inconsistencies, to give it this broad reading. Moreover, judging from the plain meaning of the statutory language and the context thereof enacted by the Legislature, we conclude that a shoulder, unlike a travel lane, is not the improved portion of a highway designed for vehicular travel. Accordingly, the order of the Court of Claims denying summary disposition on the basis of *Gregg* is reversed, the judgment of the Court of Appeals affirming that order is reversed, and this case is remanded to the Court of Claims for further proceedings consistent with this opinion.

## I. Facts and Procedural History

On the morning of March 24, 2000, Alan Thisse traveled north on I-75 in the far left lane of the three-lane highway. Thisse testified in his deposition that as he passed an entrance ramp he ran over a mound of dirt that forced his vehicle onto the left shoulder of the highway. The left shoulder consisted of a three-foot-wide strip of asphalt with an adjoining two-foot-wide gravel strip. The asphalt portion of the shoulder shared the same grade as the travel lanes. The gravel portion, however, was lower.[2] Thisse's two left tires dropped onto the gravel surface. As Thisse left the highway travel lane, plaintiff Michael Grimes had just entered onto northbound I-75. It is alleged that when Thisse recovered and reentered the highway, the grade differential between the gravel and the asphalt

_____
[2] The parties dispute the severity of the grade differential.

2

surfaces caused Thisse to lose control of his vehicle, veer into the far right lane, and crash into Grimes's vehicle. As a result of the accident, plaintiff Michael Grimes suffered permanent quadriplegia.

Plaintiffs Michael Grimes and his wife Tamara filed actions against Alan and Douglas Thisse and defendant Michigan Department of Transportation (MDOT).[3] Plaintiffs brought negligence and nuisance claims against MDOT, claiming that MDOT negligently maintained the gravel portion of the shoulder where Thisse left the roadway. They argued that MDOT designed the shoulder intending that the gravel portion would gradually slope away from the asphalt portion. However, plaintiffs allege that MDOT failed to maintain that gradual slope, resulting in the drop-off that proximately caused plaintiffs' injuries.

MDOT moved for summary disposition pursuant to MCR 2.116(C)(7), asserting governmental immunity as a defense. It argued that the shoulder fell outside the scope of the highway exception because it was not an improved portion of the highway designed for vehicular travel. Relying on *Gregg,* the Court of Claims denied MDOT's motion for summary disposition.[4]

---

[3] Plaintiff Tamara Grimes sued derivatively for loss of consortium. Plaintiffs' claims against Alan Thisse, the driver, and Douglas Thisse, the owner of the vehicle, are not part of this appeal.

[4] The parties stipulated in the order of denial to dismiss all other allegations and agreed that plaintiffs could "only proceed on their claim regarding an alleged defective shoulder as it relates to the failure of MDOT to repair and maintain the shoulder."

The Court of Appeals affirmed the judgment of the Court of Claims.[5] In a short unpublished per curiam decision, the panel relied on *Gregg* as well as subsequent Court of Appeals cases following *Gregg* in holding that a shoulder is part of the improved portion of the highway designed for vehicular travel.[6] The panel also held that this Court's subsequent decision in *Nawrocki v Macomb Co Rd Comm*[7] had not affected the jurisprudential validity of *Gregg*.

MDOT filed an application for leave to appeal, which this Court granted.[8]

## II. Standard Of Review

This Court reviews motions for summary disposition under MCR 2.116(C)(7) de novo.[9] Questions of statutory interpretation are also reviewed de novo.[10] When this Court interprets statutory language, our primary goal is to discern the intent of the Legislature as expressed in the text of the statute.[11] Where

---

[5] Unpublished opinion per curiam, issued December 16, 2004 (Docket No. 249558).

[6] *Meek v Dep't of Transportation*, 240 Mich App 105, 114; 610 NW2d 250 (2000); *Soule v Macomb Co Bd of Rd Comm'rs*, 196 Mich App 235, 237; 492 NW2d 783 (1992).

[7] 463 Mich 143; 615 NW2d 702 (2000).

[8] 474 Mich 877 (2005).

[9] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

[10] *Mitan v Campbell*, 474 Mich 21, 23; 706 NW2d 420 (2005).

[11] *Dibenedetto v West Shore Hosp*, 461 Mich 394, 402; 605 NW2d 300 (2000).

4

the language is clear and unambiguous, our inquiry ends and we apply the statute as written.[12]

### III.  Analysis

#### a.  Governmental Immunity and the Highway Exception

The governmental tort liability act (GTLA)[13] broadly shields a governmental agency[14] from tort liability "if the governmental agency is engaged in the exercise or discharge of a governmental function."[15]  The act enumerates several exceptions to governmental immunity that permit a plaintiff to pursue a claim against a governmental agency.[16]  This case concerns what is known colloquially as the "highway exception."  That provision states, in pertinent part:

> [E]ach governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel.  A person who

---

[12] *Huggett v Dep't of Natural Resources*, 464 Mich 711, 717; 629 NW2d 915 (2001).

[13] MCL 691.1401 *et seq.*

[14] A governmental agency is "the state or a political subdivision."  MCL 691.1401(d).  The state, in turn, includes "the state of Michigan and its agencies, departments [and] commissions . . . ."  MCL 691.1401(c).  Defendant, as a department of the state, is protected by the provisions of this act.

[15] MCL 691.1407(1).

[16] The Legislature codified the following exceptions: the highway exception, MCL 691.1402; the motor vehicle exception, MCL 691.1405; the public building exception, MCL 691.1406; the proprietary function exception, MCL 691.1413; the governmental hospital exception, MCL 691.1407(4); and the sewage disposal system exception, MCL 691.1417.

sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency . . . . *The duty of the state and the county road commissions to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel* and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.[17]

The GTLA provides its own definition of "highway," which is "a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway."[18] This definition of a highway excludes "alleys, trees, and utility poles."[19] Beyond defining the term "highway," the GTLA does not define these additional terms. It also does not define "shoulder" or include shoulder among the list of features such as bridges and sidewalks that are deemed to be part of a highway.

The scope of the highway exception is narrowly drawn. Under its plain language, every governmental agency with jurisdiction over a highway owes a duty to "maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel." However, when the governmental agency is the state or a county road commission, as is the case here, the Legislature constricted

---

[17] MCL 691.1402(1) (emphasis added).

[18] MCL 691.1401(e).

[19] *Id.*

6

the scope of the highway exception by limiting the portion of the highway covered by that exception. For these agencies, the highway exception does not extend to an installation "outside" the improved portion of the highway such as a sidewalk, trailway, or crosswalk, although these features are included in the general definition of a "highway." The duty of these agencies to repair and maintain does not extend to every "improved portion of highway." It attaches only "to the improved portion of the highway" that is also "designed for vehicular travel." As we discuss later in this opinion, such narrowing of the duty supplies important textual clues regarding the Legislature's intent concerning whether a shoulder falls within or without the protection afforded by the GTLA.

Although the specific issues considered in *Nawrocki v Macomb Co Rd Comm*,[20] are not before us today, that case is particularly instructive in this case.[21] In *Nawrocki*, this Court reconciled several of our previous inconsistent highway exception cases, and clarified the scope of the governmental agency's duty under the highway exception. We held in *Nawrocki* that "if the condition is not located in the actual roadbed designed for vehicular travel, the narrowly drawn highway

---

[20] 463 Mich 143; 615 NW2d 702 (2000).

[21] In *Nawrocki*, this Court decided two issues. First, the highway exception protects pedestrians who are injured by the defendant state or county road commission's failure to repair and maintain the improved portion of the highway designed for vehicular travel. *Id*. at 184. Second, the highway exception does not permit "signage" claims. That is, the state and country road commissions owed no duty to install, maintain, repair, and improve traffic control devices. *Id*.

exception is inapplicable . . . ."[22]  Put differently, the highway exception creates a duty to maintain *only* the "'traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel.'"[23]  Our focus, then, consistent with *Nawrocki*, is determining whether a shoulder is actually designed for public vehicular travel.

b.  *Gregg v State Hwy Dep't*

Plaintiffs urge this Court to affirm the judgments of the lower courts on the basis of our decision in *Gregg v State Hwy Dep't*,[24] which we decided before *Nawrocki*.  In *Gregg*, this Court considered whether the highway exception was available to a bicyclist injured by a defect in "a designated bicycle path on the inner portion of the paved shoulder of a state highway."[25]  The plaintiff suffered extensive injuries when he struck a pothole on the bicycle path and overturned his

---

[22] *Id*. at 162.

[23] *Id*. at 180 (citation omitted).

[24] 435 Mich 307; 458 NW2d 619 (1990).

[25] *Id*. at 309.  The defendant in *Gregg* raised a second argument that bicyclists could not bring suit under the highway exception.  We rejected that claim by resorting to the plain language of the highway exception, which permits "a person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel" to recover damages for injuries suffered in the improved portion of the roadway designed for vehicular travel.  MCL 691.1402(1).  This separate holding in *Gregg* is consistent with our decision in *Nawrocki* that a pedestrian may sue for an injury occurring in the improved portion of the highway designed for vehicular travel.  See *Nawrocki, supra* at 184.

bicycle. For purposes of deciding whether the trial court had properly granted the defendant's motion for summary disposition, this Court relied on a photograph of the accident scene, which pictured a bicycle path situated between the "traveled portion of the highway and its paved shoulder."[26] The majority in *Gregg* reversed the judgment granting summary disposition that had been entered in favor of the defendant, concluding that the shoulder was designed for vehicular travel.

*Gregg's* first task was to distinguish the bicycle path in that case from the bicycle path at issue in *Roy v Dep't of Transportation*.[27] *Roy* also involved an injury sustained on a bicycle path, and we concluded there that the plaintiff's claim was barred by governmental immunity. In distinguishing the two cases, the *Gregg* majority placed a great deal of reliance on where the bicycle path in that case was located in relationship to the roadbed.[28] Whereas the bicycle path in *Gregg* "comprised part of the inner portion of the shoulder," the bicycle path in *Roy* ran "parallel to" and was "detached from" the highway. As a result, *Gregg*

---

[26] *Gregg, supra* at 310.

[27] 428 Mich 330; 408 NW2d 783 (1987).

[28] The *Gregg* majority also made a superficial attempt to square its holding with an earlier decision from this Court, *Goodrich v Kalamazoo Co*, 304 Mich 442; 8 NW2d 130 (1943). *Goodrich* had held that a shoulder next to the roadway that was a three-foot-wide dirt and gravel shoulder with a tree planted "approximately 30 inches" from the pavement was not part of the traveled portion of the road. The *Gregg* majority recognized but made little effort to differentiate *Goodrich*, acknowledging that it "would probably conclude" that such a shoulder was not an "improved portion" of a highway if the factual situation in *Goodrich* had been before the *Gregg* Court. *Gregg, supra* at 313.

9

expressly rested its holding "on the assumption that the bicycle path at issue comprised part of the inner portion of the shoulder closest to the roadway,"[29] later conceding that it would have been a closer question "if the bike path had been on the outer fringes of the shoulder . . . ."[30]

After distinguishing *Roy*, the *Gregg* majority offered several reasons to support its conclusion that the shoulder encompassing the bicycle path fell within the highway exception. It noted the uninterrupted line of cases from the Court of Appeals beginning in 1971 holding that a shoulder was designed for vehicular travel.[31] Because the Legislature did not overrule that line of cases when it amended the GTLA over the years, this served as proof to the *Gregg* majority that the Legislature approved of this line of cases construing the highway exception.

The *Gregg* majority also held that it "flies in the face of common experience" to say that a shoulder is not designed for vehicular travel. It opined:

> Any motorist who has ever experienced a highway emergency understands that shoulders are essential to a safe modern highway. To get on or off a shoulder to stop, park, or leave standing a vehicle, motorists must travel on the shoulder.

---

[29] *Id*. at 310.

[30] *Id*. at 317 n 5.

[31] See, e.g., *Johnson v Michigan*, 32 Mich App 37, 39; 188 NW2d 33 (1971); *Van Liere v State Hwy Dep't*, 59 Mich App 133, 136; 229 NW2d 369 (1975); *Hall v Dep't of State Hwys,* 109 Mich App 592, 602 n 4; 311 NW2d 813 (1981); *McKee v Dep't of Transportation*, 132 Mich App 714, 721; 349 NW2d 798 (1984); *Roux v Dep't of Transportation*, 169 Mich App 582, 586; 426 NW2d 714 (1988).

At the high speeds of modern vehicles, such an endeavor often results in significant travel, "in the ordinary sense," on the shoulder of a highway. Indeed, it seems quite extraordinary, if not fictional, to assume that vehicles do not travel on shoulders or that shoulders are not designed for vehicular travel, albeit of a temporary sort.[32]

In further support of its holding, the *Gregg* majority cited what it believed to be apposite definitions from the Michigan Vehicle Code (MVC).[33] It noted that the MVC defines "highway" more broadly than "roadway." Whereas in the MVC a highway encompasses "the entire width between the boundary lines,"[34] a roadway is only that portion of the highway "improved, designed, or ordinarily used for vehicular travel."[35] According to the *Gregg* majority, the Legislature's use of the broader term "highway" in the highway exception of the GTLA evinced its intent to sweep the shoulder into that exception. Otherwise, it reasoned, the Legislature would have used the more narrowly defined term "roadway" to cabin the scope of the highway exception.

Justice Griffin dissented from the *Gregg* majority opinion, arguing, among other things, that the plain language of the highway exception excluded the

---

[32] *Gregg*, *supra* at 315.

[33] MCL 257.1 *et seq*.

[34] MCL 257.20.

[35] MCL 257.55.

11

shoulder.[36] He emphasized that the highway exception extends only to a *portion* of the highway, that is, the portion "designed for vehicular travel." [37]

### c. *Gregg* was Wrongly Decided and Poorly Reasoned

Although the Court of Claims and the Court of Appeals relied on *Gregg* to deny defendant summary disposition, we overrule *Gregg's* conclusion that a shoulder is "designed for vehicular travel." That conclusion rested heavily on the fact that the *inner* portion of the shoulder included a designated bicycle path. The *Gregg* majority expressed doubt that it would have reached the same conclusion had the designated bicycle path been located further from the edge of the travel lane of the highway.[38] This unusual factual premise—an integrated, dedicated bicycle path—from the standpoint of statutory construction is irrelevant. We

---

[36] Chief Justice Riley wrote a separate dissent concurring in Justice Griffin's analysis.

[37] Justice Griffin also discussed at length the importance of the MVC definitions and their applicability to the GTLA. While we agree with much of Justice Griffin's dissent, we do not rely on the MVC to reach our decision. See the discussion later in this opinion.

[38] See n 28 of this opinion and the accompanying text. In this case, the shoulder was immediately adjacent to I-75, a well-traveled interstate highway, and contained no designated bicycle path.

We see no principled basis for the distinction *Gregg* drew between a bicycle path located near to or farther from the travel lanes of a highway. A bicycle path included anywhere within the shoulder of a road would not otherwise be an "installation outside the improved portion of the highway" if, as *Gregg* arguably concluded, a shoulder itself constitutes an improved portion of the highway designed for vehicular travel.

believe *Gregg* is consequently so internally inconsistent that it does not yield a meaningful rule applicable to all shoulders on Michigan's highways. Frankly, upon close inspection, *Gregg* is an enigma. Its core assumption is that the location of the integrated bicycle path determined the outcome of that case. We cannot ascertain why the location of the integrated bicycle path—whether it was located on the inner portion or the outer fringe of the shoulder—bore so heavily or at all on the question whether the shoulder was designed for vehicular travel.[39] Furthermore, the *Gregg* majority's analysis, as we will show, is not based on the text of the GTLA and is seriously flawed. Therefore, we overrule *Gregg* and its progeny to the extent that they can be read to suggest that a shoulder is "designed for vehicular travel."

### d. *Gregg's* Reasoning is Erroneous

In our view, there are several fatal flaws in the analysis offered by *Gregg*. It failed to pay serious attention to the plain meaning of the text of the highway exception and it made other unpersuasive arguments.

First, the *Gregg* majority inappropriately relied on the doctrine of legislative acquiescence for the proposition that prior Court of Appeals decisions that had broadly construed the highway exception to encompass all shoulders were consistent with the Legislature's intent. This doctrine of legislative acquiescence is founded on the notion that decisions that have not been legislatively overturned

---

[39] See n 38 of this opinion.

are tacitly approved by the Legislature. The doctrine is "highly disfavored" in this Court's jurisprudence, which prescribes that courts are to discern the Legislature's intent "'from its words, not from its silence.'"[40] That the Legislature did not amend the existing language of the highway exception in response to earlier Court of Appeals cases does not suggest that the Legislature believed those cases were rightly decided.

Moreover, unlike the *Gregg* majority, we decline to rely on the Court's conception of motorists' "common experience" with road shoulders as a proper canon of statutory construction. Were this Court competent to make such a normative judgment about motorists' common experience, it would be particularly inappropriate to apply that judgment here where it departs from the plain statutory language used by the Legislature. This subtle appeal to common experience arguably substituted the *Gregg* majority's policy preference for the policy preference of the Legislature. In analyzing the highway exception, we must be governed by the statutory language.[41]

Unlike the *Gregg* Court, we also decline to consult the definitions contained in the MVC to inform our construction regarding the scope of the highway exception. Closer inspection of the MVC reveals why *Gregg's* reliance

---

[40] *Nawrocki, supra* at 177 n 33, quoting *Donajkowski v Alpena Power Co*, 460 Mich 243, 261; 596 NW2d 574 (1999) (emphasis omitted).

[41] We expect jurors to apply their "common experience" in assessing facts. Judges should apply law in interpreting statutes.

on an unrelated statute to construe another is a perilous endeavor to be avoided by our courts. The GTLA expressly incorporates only one definition from the MVC. Section 5, also known as the motor vehicle exception, refers the reader to the definition of "owner" in the MVC.[42] The absence of any other reference to the MVC in the GTLA, coupled with the explicit incorporation of "owner" in the motor vehicle exception indicates that the Legislature intended to limit the applicability of the MVC in the GTLA.[43]

Even more troubling than the *Gregg* majority's frank violation of the rules of statutory construction was the fact that it used provisions of the MVC in a highly selective manner. One of the "crucial" questions before the *Gregg* Court was "whether the paved shoulder is 'designed for vehicular travel.'"[44] *Gregg* preferentially selected and relied on only *some* of the MVC defined terms to answer that question. The *Gregg* majority cited the MVC definitions of "roadway" and "highway" to support its conclusion that a shoulder was part of the

---

[42] MCL 691.1405; see also *Stanton v Battle Creek*, 466 Mich 611; 647 NW2d 508 (2002).

[43] See *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993) ("Courts cannot assume that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there."); *Detroit v Redford Twp*, 253 Mich 453, 456; 235 NW 217 (1931) ("Courts cannot attach provisions not found therein to an act of the legislature because they have been incorporated in other similar acts."), citing *Michigan v Sparrow*, 89 Mich 263, 269; 50 NW 1088 (1891).

[44] *Gregg, supra* at 313.

15

improved portion of the highway designed for vehicular travel, but curiously failed to rely on the most relevant term defined in the MVC— "shoulder." One can only speculate why the *Gregg* majority brushed aside this term, which the MVC actually defines as "that portion of the highway contiguous to the roadway generally extending the contour of the roadway, *not designed for vehicular travel but maintained for the temporary accommodation of disabled or stopped vehicles otherwise permitted on the roadway*."[45]

Justice Griffin's dissent reminded the majority of this fact, to which the majority unconvincingly responded that what it termed "another section" of the MVC stated, ""Shoulder" means that portion of a highway or street on either side of the roadway which is normally snowplowed for the safety and convenience of *vehicular traffic*.'"[46] It is not clear why the *Gregg* majority believed this provision negated the MVC's specific definition of "shoulder," particularly because this provision does not support the conclusion that a shoulder is *designed for vehicular travel,* whereas the MVC's definition of a shoulder specifically states that a shoulder is *not* so designed. Had the *Gregg* majority relied on the *most* relevant definition, the one found in the MVC, it could not have reached the result

---

[45] MCL 257.59a (emphasis added).

[46] *Gregg, supra* at 315, quoting former MCL 257.1501(k) (emphasis in *Gregg*). In actuality, the quoted section was part of the former Michigan Snowmobile Act, not the MVC. The former provision is now found at MCL 324.82101(p).

it did.[47]  Once the *Gregg* majority inappropriately committed itself to using the language of the MVC rather than construing the actual words of the highway exception, the MVC should have pressed the Court to reach the opposite conclusion.

More important, the GTLA provides its own definition of "highway."[48] There is no apparent ambiguity in the GTLA's definition of "highway" that would warrant resort to another statute's definition of the same term.  Hence, the *Gregg* majority's use of the MVC definition was inconsistent with our canons of statutory construction.

In sum, the *Gregg* majority's conclusion that a shoulder is designed for vehicular travel and the reasons supporting that conclusion are entirely unpersuasive and must be abandoned.[49]

---

[47] If the *Gregg* majority had examined faithfully the entire MVC, it would have found additional support to conclude that a shoulder is *not* designed for vehicular travel.  The MVC requires a person to drive within the *travel lanes* or risk a civil infraction.  For example, the driver of a vehicle may not "overtake and pass another vehicle upon the right by driving off the pavement or main-traveled portion of the roadway."  MCL 257.637(2).  Thus the organic traffic laws of this state, as provided in the MVC, limit vehicular travel to the *travel lanes*.

[48] MCL 691.1401(e).

[49] Although this Court respects and gives considerable weight to the doctrine of stare decisis, we are "not constrained to follow precedent when governing decisions are unworkable or are badly reasoned." *Robinson v Detroit*, 462 Mich 439, 464; 613 NW2d 307 (2000).  For the reasons stated earlier in this opinion, we believe *Gregg* was a badly reasoned decision.  However, we must move beyond those considerations under a stare decisis analysis and examine the effects of overruling *Gregg*. *Id.* at 466.
(continued . . .)

17

e.  A Shoulder is not "Designed for Vehicular Travel"

Turning from *Gregg* to the text of the highway exception itself, we hold that the shoulder is not "designed for vehicular travel."  Plaintiffs' theory, boiled down to its core, is that a shoulder is meant to be a travel lane.  Guided by the statutory language chosen by the Legislature, we reject plaintiffs' contention.  A shoulder may be capable of supporting some form of vehicular traffic, but it is not a travel lane and it is not "designed for vehicular travel."

The GTLA does not expressly define "shoulder" or the phrase "designed for vehicular travel."  Nor does the highway exception explicitly indicate whether a shoulder is "designed for vehicular travel."  Consequently, to aid our inquiry, we must consider the plain and ordinary meaning of the phrase "the improved portion

---

(. . . continued)

One of the most significant considerations is "the effect on reliance interests and whether overruling would work an undue hardship because of that reliance."  *Id*.  We find no reliance interests at work that support the continuation of *Gregg's* erroneous interpretation of the highway exception.  Motorists traverse shoulders because of the exigencies of highway travel.  They do not traverse shoulders because our case law might permit them to recover against the governmental agency in the event of an accident.  Indeed, to do so would be a violation of the MVC.  MCL 257.637.  *Gregg* is not the sort of case that fosters a reliance interest or shapes future individual conduct.  Therefore, we do not believe we work an undue hardship in overruling *Gregg*.  Further, by correcting *Gregg's* erroneous construction of the highway exception, we restore "legitimate citizen expectations" that the Court will not arrogate to itself the legislative power to make public policy. *Robinson, supra* at 467.

18

of the highway designed for vehicular travel" and the context in which the Legislature employed this phrase.[50]

MDOT does not contest that road shoulders are "designed" with the intention that they be *used* by vehicles. It contests that shoulders are designed as *travel* lanes. This is a distinction that turns on the meaning of "travel." Taken in its broadest and most literal sense, "travel" in the highway exception could include the shortest incremental movement by a vehicle on an improved surface.[51] Therefore, in an emergency, when a motorist momentarily swerves onto the shoulder, the motorist can be said to have traveled on the shoulder. Were this broadly inclusive definition of "travel" appropriate, we might be persuaded by plaintiffs' argument that a shoulder is designed for vehicular travel. However, we reject this broad definition proposed by plaintiffs.

Adopting a broad definition of "travel" would read any meaning out of the phrase "designed for vehicular travel." When interpreting statutes, we "must give effect to every word, phrase, and clause in a statute and avoid an interpretation that would render any part of the statute surplusage or nugatory."[52] The Legislature

---

[50] MCL 8.3a; *Horace v City of Pontiac*, 456 Mich 744, 755-756; 575 NW2d 762 (1998).

[51] See *Random House Webster's College Dictionary* (1995), defining "travel" as "to go from one place to another . . . ."

[52] *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002).

modified the phrase "the improved portion of the highway" with the phrase "designed for vehicular travel." It did not intend to extend the highway exception indiscriminately to every "improved portion of the highway." Otherwise, it would not have qualified the phrase. Rather, it limited the exception to the segment of the "improved portion of highway" that is "designed for vehicular travel." Because the Legislature created this distinction, it believed there are improved portions of highway that are not designed for vehicular travel. Hence, this Court ought to respect this distinction as we parse the statutory language.

Plaintiffs in effect urge this Court to adopt the expansive definition of "travel." If "travel" is broadly construed to include traversing even the smallest distance, then it must follow that every area surrounding the highway that has been improved for highway purposes is "designed for vehicular travel" since such improved portions could support even momentary vehicular "travel."[53] Under

_____

[53] The only conceivable limitation of the highway exception under this expansive view is that the duty does not extend to an "installation *outside* of the improved portion of the highway designed for vehicular travel." MCL 691.1402(1) (emphasis added). However, it is not clear, if every improved portion of highway is designed for vehicular travel, where the improved portion of the highway designed for vehicular travel ceases.

For example, on the motion for summary disposition, the parties submitted photos that depict the area of I-75 around the accident scene. Clearly, much of this area is an "improved portion of the highway." That is, most of the area surrounding the actual roadbed bears the mark of human improvement for highway purposes. For example, separating the northbound and southbound lanes of I-75 is an intentionally sloped grassy median shaped in that fashion for any number of highway-related purposes. Plaintiffs' theory would require that we conclude that this entire swath of land, which looks dramatically different from the (continued . . .)

plaintiffs' interpretation, then, every "improved portion of the highway" is also "designed for vehicular travel." This interpretation renders these phrases redundant and contravenes a settled rule of statutory interpretation. It also conflates two disparate concepts: design and contemplated use. That vehicular traffic might *use* an improved portion of the highway does not mean that that portion was "designed for vehicular travel." Therefore, in an effort to give meaning to every word of the highway exception and to honor the Legislature's expressed intent, we reject plaintiffs' construction of the highway exception.

We believe that, taken as a whole, the language of the highway exception supports the view that a shoulder, unlike a travel lane, is not designed for vehicular travel. Consequently, we adopt a view of "travel" that excludes the shoulder from the scope of the highway exception. Thus, we hold that only the travel lanes of a highway are subject to the duty of repair and maintenance specified in MCL 691.1402(1).[54]

---

(. . . continued)
wood and shrubbery lines on either side of I-75, was an improved portion of highway *designed for vehicular travel*.

[54] In construing the GTLA, this Court has often relied on the principle set forth in *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 618; 363 NW2d 641 (1984), that exceptions to governmental immunity are construed narrowly and the grant of immunity is construed broadly. It is unnecessary to rely on this *Ross* principle to decide this case. We reject plaintiffs' argument that the shoulder is designed for vehicular travel, and we overrule *Gregg* in order to construe the statutory language reasonably and give effect to every word and phrase in the highway exception.

21

Also, our decision is consistent with *Nawrocki*. We had no opportunity in *Nawrocki* to consider the validity of *Gregg* as it relates to the question presented in this case. However, our determination that the shoulder is not designed for vehicular travel reinforces *Nawrocki's* reading of the highway exception that it encompassed only the "'traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel.'"[55]

## IV. Response to the Dissent

Although the dissent would reaffirm *Gregg*, it fails to rebut the peculiarities and flaws in *Gregg's* reasoning highlighted above and rests heavily on the doctrine of legislative acquiescence, which this Court has clearly discredited and rejected.[56] Furthermore, the dissent offers no serious rebuttal to our construction of the highway exception. We do not harbor, as the dissent accuses, a "subjective fear" that *Gregg* exposes the governmental agency to "unlimited liability."[57] Rather, this Court simply seeks to give effect to each word and phrase employed by the Legislature. A shoulder may be capable of supporting vehicular traffic, but this fact does not answer the legal question whether the Legislature intended to designate shoulders as an "improved portion of the highway designed for vehicular travel" and thereby expose a governmental agency to tort liability for

---

[55] *Nawrocki, supra* at 180 (citation omitted).

[56] *See Donajkowski v Alpena Power Co*, 460 Mich 243, 258-262; 596 NW2d 574 (1999).

[57] *Post* at 8.

defects in a shoulder. If plaintiffs' definition of "travel" were to prevail, then a key phrase in the highway exception is rendered surplusage. This is inconsistent with our settled rules of statutory construction.

## V. Conclusion

We overrule *Gregg* because it was internally inconsistent and it appealed to inappropriate methods of statutory construction. Consistent with the language of the highway exception, we conclude that the shoulder is not designed for vehicular travel. As this Court previously held in *Nawrocki*, the focus of the highway exception is the actual physical roadbed. Moreover, by concluding that the shoulder is not "designed for vehicular travel," we fulfill our obligation to give effect to every word of the highway exception.

Accordingly, we reverse the order of the Court of Claims and the judgment of the Court of Appeals and remand this case to the Court of Claims for further proceedings consistent with this opinion.

Robert P. Young, Jr.
Clifford W. Taylor
Elizabeth A. Weaver
Maura D. Corrigan
Stephen J. Markman

23

STATE OF MICHIGAN

SUPREME COURT

MICHAEL GRIMES and TAMARA
GRIMES,

      Plaintiffs-Appellees,

V                                 No.  127901

MICHIGAN DEPARTMENT OF
TRANSPORTATION,

      Defendant-Appellant.

_____

KELLY, J. (*dissenting*).

The issue presented is whether the shoulder of the road is part of the "improved portion of the highway designed for vehicular travel" for purposes of the highway exception to governmental immunity. MCL 691.1402(1). Unlike the majority, I would reaffirm this Court's holding in *Gregg v State Hwy Dep't*,[1] and hold that a shoulder is "designed for vehicular travel." Therefore, I would affirm the decision of the Court of Appeals.

STANDARD OF REVIEW

The trial court denied defendant's motion for summary disposition. We review such rulings de novo. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

_____

[1] 435 Mich 307; 458 NW2d 619 (1990).

In making our de novo review, we are called on to determine an issue involving statutory construction. Such matters are questions of law that also are reviewed de novo. *Roberts v Mecosta Co Gen Hosp,* 466 Mich 57, 62; 642 NW2d 663 (2002). Our primary goal in construing the meaning of statutes is to determine the intent of the Legislature. Everyone on the Court is in accord that, if a statute's language is clear and unambiguous, it must be enforced as written. *People v Laney,* 470 Mich 267, 271; 680 NW2d 888 (2004). Also, it is generally agreed that the Legislature is presumed to have intended the meaning expressed in the words it wrote. *Roberts, supra* at 63. All words and phrases are "construed and understood according to the common and approved usage of the language . . . ." MCL 8.3a.

ANALYSIS

The immunity of government from suit is made possible by the governmental tort liability act (GTLA), MCL 691.1401 *et seq.* It sets forth the basic tenets of governmental immunity: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). There are a few exceptions. One is contained in MCL 691.1402(1), which is commonly referred to as the "highway exception." It provides, in relevant part:

> [E]ach governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who

2

sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency . . . *The duty of the state and the county road commissions to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel* and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel. [Emphasis added.]

"Highway" is defined by the GTLA as "a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway." MCL 691.1401(e). "Shoulder" is not defined in the GTLA.

I believe that this Court's decision in *Gregg* correctly interpreted these statutory provisions. It recognized that, for purposes of the highway exception to governmental immunity, a shoulder is part of the highway "designed for vehicular travel." *Gregg, supra* at 317. The *Gregg* Court reached its decision for three reasons.

First, the Court noted that, beginning in 1971, the Court of Appeals has consistently held that the shoulder of a highway is designed for vehicular travel. *Id.* at 314.[2] In making this ruling, the Court applied the concept of legislative

---

[2] See, e.g., *Johnson v Michigan*, 32 Mich App 37, 39; 188 NW2d 33 (1971); *Van Liere v State Hwy Dep't*, 59 Mich App 133, 136; 229 NW2d 369 (1975); *Hall v Dep't of State Hwys*, 109 Mich App 592, 602 n 4; 311 NW2d 813 (1981); *McKee v Dep't of Transportation*, 132 Mich App 714, 721; 349 NW2d (continued . . .)

acquiescence. Since the Legislature chose not to amend the GTLA in the face of numerous holdings of the Court of Appeals, it acquiesced in the Court of Appeals interpretation of the law. *Id.*

Second, the Court held that it would fly in the face of "common experience" to hold that a highway shoulder is not designed for vehicular travel. *Id*. at 315. The Court reasoned that all motorists understand that, because a shoulder is an essential safety feature of a highway, it is part of the highway. Specifically, the Court stated that

> [t]o get on or off a shoulder to stop, park, or leave standing a vehicle, motorists must travel on the shoulder.
>
> At the high speeds of modern vehicles, such an endeavor often results in significant travel, "in the ordinary sense," on the shoulder of a highway. Indeed, it seems quite extraordinary, if not fictional, to assume that vehicles do not travel on shoulders or that shoulders are not designed for vehicular travel, albeit of a temporary sort. [*Id.*]

Third, the Court considered relevant definitions found in the Michigan Vehicle Code (MVC). MCL 257.1 *et seq. Id.* Specifically, it considered the MVC definitions of "highway" and "roadway." It noted that the MVC definition of "highway"[3] is broader than the definition of "roadway."[4] It then concluded that

---

(. . . continued)
798 (1984); *Roux v Dep't of Transportation*, 169 Mich App 582, 586; 426 NW2d 714 (1988).

[3] MCL 257.20 defines "highway" to include "the entire width between the boundary lines."

[4] MCL 257.55 defines "roadway" to include only the portion of a highway "improved, designed, or ordinarily used for vehicular travel."

4

the Legislature's use of the word "highway" rather than "roadway" in the highway exception statute showed that it intended that shoulders be considered as designed for vehicular travel. *Id.* at 315-316.

The majority concludes that the rationale presented in *Gregg* is unpersuasive. It states that *Gregg* should be overruled because, under the majority's "strict construction" approach, a shoulder is not "designed for vehicular travel."

MCL 8.3a and numerous recent decisions from this Court emphasize that we should give words their ordinary meanings in construing statutes.[5] In fact, this Court often refers to dictionary definitions to interpret the meanings of words. A dictionary is a codification of the "common experience" meanings of words. I believe that the *Gregg* Court properly emphasized the mandate of MCL 8.3a when it held that "it seems quite extraordinary, if not fictional, to assume that vehicles do not travel on shoulders or that shoulders are not designed for vehicular travel, albeit of a temporary sort." *Gregg, supra* at 315.

Moreover, *Gregg's* holding is consistent with dictionary definitions for "design" and "travel." *Random House Webster's College Dictionary* (1995)

---

[5] See, e.g., *People v Monaco*, 474 Mich 48; 710 NW2d 46 (2006); *Griffith v State Farm Mut Automobile Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005); *Halloran v Bhan*, 470 Mich 572, 578; 683 NW2d 129 (2004); *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 763; 685 NW2d 391 (2004); *Koontz v Ameritech Services, Inc*, 466 Mich 304, 312; 645 NW2d 34 (2002).

5

defines "design" as "to intend for a definite purpose[.]" It defines "travel" as "to move or pass from one place or point to another."

Defense counsel's admission at oral argument comported with the *Gregg* Court's "common experience" reasoning. Counsel conceded that shoulders are designed for vehicular travel "of a sort." Emergency vehicles travel on the shoulder, and the Michigan Department of Transportation (MDOT) typically diverts vehicular traffic onto shoulders during construction. Given these facts, defense counsel admitted that shoulders are designed for travel "of a sort."[6]

Certainly, MDOT would not permit motorists to drive their vehicles from one place to another on a portion of the highway that is not designed for vehicular travel. These facts, together with traditional notions of statutory construction, strongly support *Gregg*'s reasoning. The majority's conclusion that the "common experience" approach is inconsistent with the statutory language is flawed in light of this Court's current practices and MCL 8.3a.

The majority also takes issue with *Gregg's* use of legislative acquiescence. This issue has arisen numerous times in the last several years. I continue to believe that we should consider legislative acquiescence when construing statutes. See *Donajkowski v Alpena Power Co*, 460 Mich 243, 270-273; 596 NW2d 574 (1999) (Kelly, J., dissenting). Since 1971, when appellate cases began defining "designed for vehicular travel," the Legislature has amended the highway

---

[6] The majority does not even attempt to contradict this admission.

6

exception three times. But it did not see fit to alter the judicial interpretation of those words.[7] The Legislature's acceptance of *Gregg* is highly persuasive.[8]

In summary, I believe that *Gregg* was correctly decided. I would affirm it on the basis of (1) basic accepted principles of statutory interpretation, (2) defense counsel's unrebutted admission that a shoulder is designed for vehicular travel "of a sort," (3) MDOT's use of shoulders for diversion of vehicular traffic during construction, and (4) the fact that the law in question has remained unaltered since 1971.

In holding that shoulders are not "designed for vehicular travel," the majority admits that several interpretations are available but chooses the narrowest one possible.[9] Essentially, it argues that giving the words "designed for vehicular travel" their plain ordinary meaning swallows the exception, because a vehicle could travel on every improved part of a highway. This argument has three flaws:

First, the majority fails to remember that, although drivers rarely travel on medians or embankments, they do routinely travel short distances on shoulders.

---

[7] The Legislature amended the statute in 1990, 1996, and 1999.

[8] The majority asserts that the Court's ruling in *Gregg* was based on the assumption that the Legislature had acquiesced in the Court's earlier decisions. This ignores the fact that the *Gregg* Court went further. It based its holding primarily on an interpretation of the language of MCL 691.1402(1) that gave an ordinary meaning to the word "travel."

[9] The majority suggests that it does not need to apply *Ross v Consumers Power Co* (*On Rehearing*)*,* 420 Mich 567; 363 NW2d 641 (1984) to this case. In actuality, the majority does apply *Ross* and reads the statute narrowly.

7

Moreover, MDOT specifically requires vehicles to travel on shoulders for long distances. The same cannot be said for other highway improvements.

Second, as explained in *Wexford Med Group v City of Cadillac*,[10] a court should not make an interpretation not intended by the Legislature because it fears what will develop if it interprets the language as written. *Id.* at 220 n 10. The majority suggests that giving the statute's language a meaning other than the narrowest possible meaning would create the risk of unlimited liability, which is something it must avoid. Its conclusion contradicts *Wexford,* apparently out of a subjective fear.

Third, the only issue before the Court is whether a shoulder is designed for vehicular travel. Whether other improved portions of the highway are designed for vehicular travel is a question best left to cases that raise and explore that possibility.

Ultimately, the majority's reasoning fails because of the language of the statute and because of the fact that vehicles do indeed travel on shoulders that were designed for travel. By contrast, the reasoning in *Gregg* is soundly supported by the meaning of the words in the statute and by common practice. Moreover, *Gregg* is properly in line with the majority's rules of statutory interpretation.

---

[10] 474 Mich 192; ___ NW2d ___ (2006).

CONCLUSION

I would reaffirm this Court's decision in *Gregg* and hold that the shoulder of a highway is "designed for vehicular travel" within the meaning of the highway exception to governmental immunity. I base this position on (1) time-honored principles of statutory interpretation, (2) defense counsel's unrebutted admission that a shoulder is designed for vehicular travel, (3) MDOT's actions of actually diverting traffic onto the shoulders of highways, and (4) the fact that Michigan courts have followed this interpretation since 1971. Therefore, I would affirm the decision of the Court of Appeals.

Marilyn Kelly

Cavanagh, J., concurred only in the result proposed by Kelly, J.

Michael F. Cavanagh