MCCORMACK, J.
(dissenting). I respectfully dissent. I agree with the majority on a number of points: that the immunity conferred by the governmental tort liability *658 act (GTLA), MCL 691.1401 et seq., is broad, and its exceptions, such as the highway exception, are narrowly drawn; that, in assessing whether the alleged defect in this case fell within the scope of that exception, it is necessary to consider the design of the highway at the time of the injury; that the highway’s paint markings at that time provide relevant evidence of its design; and that neither Nawrocki v Macomb Co Rd Comm, 463 Mich 143; 615 NW2d 702 (2000), nor Grimes v Dep’t of Transp, 475 Mich 72; 715 NW2d 275 (2006), is dispositive of whether the improved portion of the highway at issue here was “designed for vehicular travel.” MCL 691.1402(1). I cannot agree, however, that under a proper interpretation of the highway exception’s plain language or a proper application of our precedent, the defendant is entitled to immunity and summary disposition in this case.
It is important, at the outset, to remember precisely what the controlling inquiry is: whether the alleged defect was located in “the improved portion of the highway designed for vehicular travel. . . .” MCL 691.1402(1). The majority, relying on Grimes, 475 Mich at 73-74, uses different language to frame this question, asking “whether a parking lane is a ‘travel lane’—and therefore ‘designed for vehicular travel’— within the meaning of the statute.” Grimes did, of course, use the phrase “travel lane” in articulating its holding; the statute, however, does not, nor does it otherwise address or differentiate between types of “lanes.” And as this Court has made clear, we must tread very carefully when using terminology foreign to the statute in analyzing its scope: our interpretation must always start with and remain governed by “a close examination of the statute’s plain language” and not “merely attempt [] to add still another layer of judicial gloss to those interpretations of the statute *659 previously issued by this Court and the Court of Appeals.” Nawrocki, 463 Mich at 150. I question whether the phrase “travel lane” is an apt shorthand for “improved portion of the highway designed for vehicular travel,” but regardless, our interpretive obligation is to ensure it becomes nothing more than that; the phrase must not be permitted to obscure or supplant the language chosen by the Legislature to express its intent.[1]
When construing that plain language in light of the facts of this case, I fail to see why the location of the alleged defect at issue fell outside “the improved portion of the highway designed for vehicular travel.” There is no dispute here that this defect was located in an “improved portion of the highway”; the only question is whether that portion of the highway was, at the time of the injury, “designed for vehicular travel.” The paint markings on the roadbed designated this portion of the highway for parallel parking, and I agree with the majority that this evidences it was designed for at least that use.[2] I disagree, however, that a portion of *660 the highway designed for parallel parking is not “designed for vehicular travel.”
The GTLA does not define “travel.” The word’s lay definitions vary in breadth, but they commonly comprise and contemplate a planned and purposeful progression from an origin to a destination—or, in terms particularly relevant here, the passage along a route from one point to another. As a verb, for instance, to “travel” is, variously, to “go,” “move,” or “pass” “from one place or point to another”; to “take a trip”; to “proceed or advance”; “to move in a fixed course, as a piece of mechanism”; and “to journey or traverse (a specified distance).” Random House Webster’s College Dictionary (2005). When used as a noun, as it is in the highway exception, “travel” is, for instance, “the coming and going of people or conveyances along a route,” and “movement or passage in general,” with “passage” being “the route or course by which a person or thing passes or travels.” Id. “Route,” in turn, is “a course, way, or road for passage or travel,” and “a customary or regular line of passage or travel”; “course,” similarly, is “a direction or route taken or to be taken,” and “advance or progression in a particular direction.” Id.
Accordingly, under the plain meaning of the highway exception’s terms, a portion of a highway is “designed for vehicular travel” if it is designed, or intended, for a vehicle’s planned and purposeful progression from origin to destination—that is, to provide a route for a vehicle’s passage from one point to *661 another. See Suttles v Dep’t of Transp, 457 Mich 635, 648; 578 NW2d 295 (1998) (opinion by MALLETT, C.J.) (“ ‘[T]he phrase “designed for vehicular travel” can only be reasonably interpreted to mean “intended for vehicular travel.” ’ ”), quoting Mason v Wayne Co Bd of Comm’rs, 447 Mich 130, 137; 523 NW2d 791 (1994) (alteration in original). A highway may be designed to provide vehicles with any number of such routes; the improved portions of the highway that fall within these intended routes—and thus invite vehicles to drive over them as part of the vehicles’ planned progression from one point to another—are “designed for vehicular travel” and are subject to the highway exception’s duty of repair and maintenance.[3]
An improved portion of the highway designated for parallel parking falls comfortably within this reading of the statute’s plain language. By designating a location for the parking of a vehicle, this portion of the highway is designed to provide the beginning and ending segments of the highway’s intended route(s). A vehicle’s passage through these beginning and ending segments constitutes a part of its “travel” as much as that vehicle’s passage through various other segments of an intended route, such as those designated for thoroughfare, merging, turning, and so forth—none of which the defendant contends, or our caselaw indicates, would fall outside “the improved portion of the highway designed for vehicular travel.” Indeed, the lines delineating the parking spots, like those marking *662 these other segments, specifically invite a vehicle to drive over this portion of the highway and offer guidance as to how. This stands in clear contrast to the portion of the highway designated as its shoulder, which, as its own paint markings and other designators make clear, is not designed as part of an intended route, but instead is designed to run alongside that route and provide temporary accommodation for emer-gently stopped or disabled vehicles.
The majority acknowledges and articulates much of this: namely, that a portion of a highway designated for parallel parking “specifically invites drivers to end their journeys there and, sometime later, begin new journeys,” whereas “[t]he shoulder of a highway is designed as a temporary breakdown or emergency area” and “is not intended or designed to be part of a traveler’s journey from one location to another.” Nonetheless, the majority concludes that this parking-designated portion of the highway is, like a shoulder, not designed for vehicular travel because “parking . . . is only incidental to travel and does not itself constitute travel.” This conclusion is seemingly premised on two core points: (1) the belief that “[i]n common English usage, a parking lane is closer to being a travel lane’s antonym than its synonym” because “ [t] o park is to stop” but “to travel is to go” and “[w]e travel to our destination” but only “park once we have arrived” at it; and (2) the notion that “the momentary ingress and egress necessarily accompanying parallel parking” does not constitute “travel” under Grimes because that case “rejected the notion that ‘travel’ should be ‘broadly construed to include traversing even the smallest distance ....’” I find neither point convincing.
First, as noted, focusing on whether the term “parking lane” is closer to being the synonym or the antonym *663 of “travel lane” risks misplacing the relevant interpretive inquiry, given that the highway exception does not articulate or attempt to define itself on the basis of different types of “lanes”; it simply asks whether portions of the highway are improved and, if so, designed for vehicular travel. See Nawrocki, 463 Mich at 175 (overruling a prior decision of this Court for “failing] to simply apply the plain language of the highway exception and, instead, reifying] on judicially invented phrases nowhere found in the statutory clause”). And perhaps more fundamentally, I do not find apt the majority’s offered distinction between these types of “lanes,” or more generally between travel and parking. As discussed, “travel” is not simply the act of going; it is the passage, the progression along a route, from one point to another. Accordingly, for purposes of interpreting the highway exception, a “travel lane” is an improved portion of the highway that is designed for such vehicular passage. The act of parking the vehicle completes, and is thus a part of, that passage; I fail to see why that act would not constitute travel simply because it involves bringing the vehicle to rest. Nor, for that matter, do I see why a vehicle should be deemed to have completed its travel, and arrived at its intended destination, at some point before it reaches that designated terminus of its route. Furthermore, and as the majority recognizes, a “parking lane” is designed not only as a means for a vehicle to end its route, but also as a means to begin one—that is, “to go.”[4] Thus, even framing the inquiry with the *664 majority’s terminology, I reach the same result: a “parking lane”—like the many other “lanes” on a highway (such as a “thoroughfare lane,” a “merge lane,” a “turn lane,” and so on), but unlike a shoulder—is simply a type of “travel lane” for purposes of the highway exception and therefore falls within that exception’s scope.
This feeds into the majority’s second offered reason: that, under Grimes, a vehicle’s entry into and exit from a “parking lane” is not “travel” because that movement, like a vehicle’s momentary use of a shoulder, involves “the same basic action” of “traversing a short distance.” For the reasons discussed, I cannot view these movements as “the same basic action” for purposes of the highway exception. It is true that, in making a brief detour onto a shoulder, a vehicle might go through the same physical actions it would in using a parallel-parking spot, with the only difference being the paint markings over which the vehicle passes in *665 doing so. But as the majority makes clear, the paint markings cannot be ignored in our statutory analysis; they are critical indicators of the dispositive inquiry— for what purpose was the improved portion of the highway at issue designed? Accounting for this inquiry, the analogy does not hold: the vehicle using the shoulder is digressing from the highway’s designed vehicular route, whereas the vehicle using the parking spot is proceeding along it; the former is not driving on a portion of the highway designed for vehicular travel, but the latter is. These two vehicular movements are thus fundamentally distinct under the highway exception, regardless of their physical similarities.[5]
*666 Nor do I read Grimes to bolster this analogy. I agree that Grimes rejected the notion that “travel” should be understood to comprise every “incremental” or “momentary” movement a vehicle may make over an improved portion of a highway. Grimes, 475 Mich at 89-90; it did not, however, hold, and cannot fairly be read to suggest, that “travel” necessarily excludes every vehicular movement that could be characterized as momentary, incremental, or short.
Grimes did not offer an affirmative definition of “travel.” It acknowledged that to “travel” is commonly understood to mean “to go from one place to another” and declined to read that common understanding in its “broadest and most literal sense” such that it would necessarily “include the shortest incremental movement by a vehicle on an improved surface”—as when, for instance, “in an emergency ... a motorist momentarily swerves onto the shoulder . . . .” Id. at 89 & n 51 (quotation marks and citation omitted). Grimes did not, however, purport to define “travel” on the basis of this single illustration, nor did it suggest that “travel” should be understood as comprising only movements of a certain length or duration. Rather, what Grimes made clear through this illustration was that “travel” could not be construed so broadly as to categorically include every movement a vehicle does or could make on an “improved portion of the highway,” as doing so would leave no meaning to the phrase “designed for vehicular travel” and would ignore the Legislature’s express focus on design rather than use:
If “travel” is broadly construed to include traversing even the smallest distance, then it must follow that every area *667 surrounding the highway that has been improved for highway purposes is “designed for vehicular travel” since such improved portions could support even momentary vehicular “travel.” Under plaintiffs’ interpretation, then, every “improved portion of the highway” is also “designed for vehicular travel.” This interpretation renders these phrases redundant and contravenes a settled rule of statutory interpretation. It also conflates two disparate concepts: design and contemplated use. That vehicular traffic might use an improved portion of the highway does not mean that that portion was “designed for vehicular travel.” Therefore, in an effort to give meaning to every word of the highway exception and to honor the Legislature’s expressed intent, we reject plaintiffs’ construction of the highway exception. [Id. at 90.]
Thus, as Grimes explained, “an intentionally sloped grassy median” running between the northbound and southbound lanes of a highway cannot be considered “designed for vehicular travel” simply because it has been “shaped in that fashion for any number of highway-related purposes” and “could support even momentary vehicular ‘travel.’ ” Id. at 90 & n 53. And, per Grimes, the same holds for the shoulder of a highway.[6]
At no point did Grimes suggest that this reasoning or result depended on how far a vehicle could drive on the grassy median, or shoulder, or other improved *668 portion of the highway.[7] Nor did it suggest that two vehicular actions should be considered “the same” for purposes of the highway exception simply because they both could be characterized as “traversing a short distance.” Rather, Grimes made clear that the phrase “designed for vehicular travel” cannot be defined to comprise every improved portion of the highway over which a vehicle could end up driving as it proceeds from one point to another, irrespective of whether the portion was designed to be used as part of the vehicle’s route between those points. Nothing in Grimes suggests that “travel” would exclude some portions of such a designed route.[8] And indeed, no other caselaw has indicated that an improved portion of a highway is not “designed for vehicular travel” when it has been designed to be a part of a vehicle’s intended route on that highway.
The majority stresses that the highway exception is to be construed narrowly. I agree. See, e.g., Nawrocki, 463 Mich at 149-150. It cannot, however, be construed more narrowly than the Legislature intended, as expressed through the plain language it chose. See id. at 150-151. For the reasons discussed, I am unable to *669 discern a reading of the highway exception’s plain language that is narrow enough to exclude the improved portion of the highway at issue here. Nor do I see how such a reading would comport with our established, overarching interpretive goal “ ‘[i]n resolving the questions presented by’ ” the GTLA: “ ‘to create a cohesive, uniform, and workable set of rules which will readily define the injured party’s rights and the governmental agency’s liability.’ ” Id. at 148-149, quoting Ross v Consumers Power Co (On Rehearing), 420 Mich 567, 596; 363 NW2d 641 (1984). Rather, under the majority’s interpretation of the highway exception, the governmental agency has a duty to maintain and repair some segments of a vehicle’s intended route, but not others; it can mark an improved portion of the highway for parking—and thus specifically intend and invite a vehicle to begin or end its route there—but unlike the other segments of that intended route, have no obligation whatsoever to ensure that it is, in fact, “reasonably safe and convenient” for such passage (or any other “public travel,” for that matter). MCL 691.1402(1). The governmental agency will not always be free from this obligation as to a parking-designated portion of a highway, and likewise, a traveler will not always be afforded its assurances of safety and fitness when parking in a given spot. Whether the obligation exists, and whether a traveler can expect a parking spot to be kept safe, will vary from spot to spot, depending on whether the spot is designated only for parking, and if so, whether that designation applies all of the time, or some of it. As to the particular parking spot here, the majority instructs that the defendant had no actionable duty; as to other types of spots, or other segments of a vehicle’s intended route, it remains largely unclear to me how this ruling should be under *670 stood and applied.[9] None of this—the majority’s ruling, or its consequences—strikes me as consistent with or supported by our prior precedent regarding how the highway exception should be interpreted. And more fundamentally, I cannot conclude that the Legislature intended any of it when plainly mandating a duty to maintain and repair “the improved portion of the highway designed for vehicular travel.” MCL 691.1402(1).
The majority says this is “a line-drawing case.” The lines it purports to draw, however, do not match those I see in the statute, in our precedent, or on the road. Accordingly, I dissent and would affirm the denial of the defendant’s motion for summary disposition.
Viviano and Bernstein, JJ., concurred with McCormack, J.

 The majority notes that “we are not free to disregard” Grimes’s holding, including its use of the phrase “travel lane.” I, of course, agree that Grimes cannot be disregarded here, nor do I think it should be; I do not take issue with that case’s ruling that shoulders are not designed for vehicular travel, and—as set forth infra—I find its reasoning fully compatible with and supportive of my conclusion that parking-designated portions of a highway are so designed. Reaching that conclusion requires no disregard of Grimes or its chosen terminology— just a proper understanding of its meaning and role in our interpretive exercise, as discussed above.

 In remanding this case for entry of an order granting the defendant’s motion for summary disposition, the majority concludes that these paint markings evidence, as a matter of law, that this portion of the highway was designed exclusively for parallel parking. It remains unclear to me why these markings necessarily have that legal effect—that is, what authority makes clear that the presence of these markings designates this portion of the highway for parallel parking to the complete *660 exclusion of all other vehicular uses. Ultimately, however, I see no need to reach or resolve this issue. Because, in my estimation, an improved portion of a highway designed exclusively for parking is “designed for vehicular travel,” the defendant’s motion fails, regardless of any factual dispute there may be over whether the portion of the highway at issue here was also designed for other vehicular uses at the time of the plaintiff’s injury.

 The majority alludes to a “more general understanding of vehicular travel” that “stands in opposition to” the one I offer here. I am uncertain what that is, exactly; as the above makes clear, however, I agree that, for purposes of the highway exception, what matters is not the “actual” path a vehicle may or does end up taking over the improved portions of a highway, but the route(s) the highway was designed to provide for that vehicle in progressing from one point to another.

 The majority notes that the definitions of “travel” discussed above “connote movement, not starting or stopping a journey,” but I see no such distinction in those definitions. The acts of starting and stopping a journey, of course, always involve movement. And as discussed, the definitions of “travel” contemplate passage, movement, along a route from one point to another. Nowhere do those definitions suggest that *664 travel comprises less than all of that movement along a route or excludes the segments that entail departing from a designated point of origin and reaching a designated point of destination. The majority gestures toward Grimes in support of that reading of “travel,” but as discussed infra, such reliance is misplaced.
Nor do I understand the practical implications of such a construction of “travel.” When is a vehicle deemed to have completed its travel—to have, as the majority put it, arrived at its destination—if not at the point where its route reaches a designated end point? What, if not those designated points, marks the start and end of the travel? Does the travel, for instance, simply end when the vehicle is in closest proximity to the location to which its driver ultimately plans to go after parking and exiting the vehicle? If the driver proceeds further'—down the street, around a corner, and so on—in search of an available parking spot, is none of that part of its travel? And if it is, why, then, does the travel continue that far but then suddenly cease when the vehicle reaches some certain, but unspecified, proximity to the available spot? I see nothing in the definitions of “travel,” or in Grimes, that would invite these questions, let alone suggest their answers.

 I thus agree with the majority that the “digression is what makes the difference,” in that a vehicle is digressing from its intended route when it uses a shoulder, but is proceeding along that route when using a parking-designated portion of the highway. Both portions of the highway, as the majority notes, may he used by a vehicle in “com[ing] to a complete stop,” but only the parking-designated portion is designed to be used by a vehicle as a part of its passage along a route from one point to another. Indeed, if a vehicle’s passage between points goes as designed, the vehicle never makes use of the shoulder; that passage always will, however, and must, begin and end with use of a parking space. The critical distinction is in the design. The majority rejects this distinction—and the corresponding notion that a “parking lane” is, unlike a shoulder, just another type of “travel lane”—by repeating that parking “is only incidental to travel. . . .” But this simply offers the conclusion in support of itself. It does not explain why use of a parking-designated portion of a highway is “incidental” to, or a “digression” from, travel when it—unlike use of a shoulder—is an intended and required part of a vehicle’s route from one point to another. Nor does it explain why, in light of this distinction in design, a vehicle should be considered to have been “specifically invite[d]” by the governmental agency to “cease or begin traveling” when using a shoulder in the same way it has when using a parking-designated portion of the highway. Or why “the paint markings at issue here,” distinct as they may be from the solid white line designating a shoulder, should nonetheless be taken to “illustrate” this equivalence. For all the reasons discussed herein, I agree that the parking-designated portion of the highway is designed for the beginning and ending stages of travel; the shoulder, however, is *666 designed for no such travel. Their respective markings reflect this critical distinction, and I fail to see why our ruling here should not as well.

 In light of this emphasis on design rather than use, I struggle with the majority’s suggestion that, under a “faithful” reading of Grimes, it simply “does not matter” “[t]hat a shoulder stop is often unplanned and a parking stop is often planned . . . .” Ignoring that distinction, in my mind, is no more compatible with Grimes than ignoring the difference between a vehicle driving down the shoulder and one driving on a portion of the highway designated for thoroughfare. For both the thoroughfare- and parking-designated portions of the highway, the governmental agency has planned, and thus designed, them to be used as part of the vehicle’s route; the shoulder’s usage has not been so planned.

 Grimes, for instance, did not suggest that the highway exception’s coverage of a shoulder may depend on how far or safely the shoulder’s design permitted a vehicle to drive over it; its assessment of these improved portions of a highway was categorical.

 This reading also comports with the majority’s example of an improved portion of the highway that is normally designated as a shoulder, but has been temporarily redesignated as part of the highway’s vehicular route while repairs are underway on another improved portion of the highway. The redesignation renders that portion of the highway “designed for vehicular travel”—a conclusion that depends not on what length of the shoulder has been redesignated, but instead on the fact that, through such redesignation, vehicles have been invited to drive over that portion of the highway as part of their passage from one point to another.

 What of other types of paint markings that may be used to designate a portion of the highway for parking, for instance? What is the effect of other potential designators, such as parking meters on the curb? And what if the parking-designated portion is not clearly or completely delineated; how are its boundaries—and the corresponding scope of the governmental agency’s obligations—determined? Somewhat similarly, if a portion is designated exclusively for parking at some times of the day but not others, does the governmental agency’s immunity depend on during which of those time periods an injury was suffered? And are there now other segments of a highway’s intended vehicular route that, by similar analogy to Grimes, can also be broken off and carved out from the governmental agency’s duty to maintain and repair? How should that assessment be made, and according to what criteria? Is it any segment of the route whose intended vehicular use can be characterized as “momentary,” “incremental,” “short,” or some other such descriptor? At what length does a segment of a route become “incremental,” and how should the segment’s beginning and ending points be determined?