YONO v DEPARTMENT OF TRANSPORTATION (ON REMAND)

Docket No. 308968. Submitted April 21, 2014, at Lansing. Decided
    September 23, 2014, at 9:05 a.m. Leave to appeal sought.

    Helen Yono brought an action in the Court of Claims against the
        Department of Transportation, seeking damages for injuries sus-
        tained when she fell while walking near the sidewalk next to her
        car that was parked in a paved and striped area of M-22 designated
        for parallel parking. The court, Clinton Canady, III, J., denied the
        department's motion for summary disposition, holding that the
        highway exception to governmental immunity from tort liabil-
        ity, MCL 691.1402(1), applied. The court determined that the
        portion of the highway designated for parallel parking was de-
        signed for vehicular travel within the meaning of MCL
        691.1402(1). The department appealed. The Court of Appeals,
        BECKERING and M. J. KELLY, JJ. (TALBOT, P.J., dissenting), affirmed.
        299 Mich App 102 (2012). The department sought leave to appeal.
        The Michigan Supreme Court heard oral argument on the appli-
        cation. In lieu of granting leave to appeal, the Supreme Court
        remanded the case to the Court of Appeals, directing the Court of
        Appeals to consider on remand what standard a court should apply
        in determining as a matter of law whether a portion of highway
        was designed for vehicular travel and whether Yono had pleaded
        sufficient facts to create a genuine issue of material fact under that
        standard. 495 Mich 982 (2014).

        On remand, the Court of Appeals held:

        1. Governmental immunity inheres in governmental agencies as
    a characteristic of government and, accordingly, there is a presump-
    tion that a governmental agency is immune from suit unless an
    exception to governmental immunity applies to the facts of the case.
    In order to rebut the presumption of immunity, a party suing a unit
    of government must plead in avoidance of governmental immunity by
    stating a claim that fits within a statutory exception to immunity or
    stating facts that demonstrate the alleged tort occurred during the
    exercise or discharge of a nongovernmental or proprietary function.
    Under the highway exception to governmental immunity, MCL
    691.1402(1), a person who sustains bodily injury or damage to his or
    her property by reason of failure of a governmental agency to keep a

highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover damages from the governmental agency. The agency's duty keep the highway in reasonable repair extends only to the improved portion of the highway designed for vehicular travel. In order to plead in avoidance of governmental immunity under the highway exception, Yono only had to allege facts sufficient to place the department on notice that she suffered an injury caused by the department's failure to maintain the highway in reasonable repair and that the condition that caused her injury was located within an area of the improved portion of the highway that was designed for vehicular travel. In her complaint, Yono alleged that she was a pedestrian walking on the improved portion of M-22 when she fell and suffered an injury. She further alleged that the department had exclusive jurisdiction over that improved portion of the highway and had failed to properly maintain it, which proximately caused her fall and injury. Yono specifically identified the applicable statutory exception to governmental immunity and correctly identified the duty that applied to the department as the agency with jurisdiction. Considering her complaint as a whole and in the light most favorable to her, Yono alleged sufficient facts to place the department on notice that it was her position that the department had a statutory duty to maintain the improved portion of the highway at issue under the highway exception to governmental immunity and she sufficiently identified the location in order to permit the department to take a responsive position regarding whether that portion of the highway fell within the exception. Therefore, Yono's complaint met the minimum requirements for pleading in avoidance of governmental immunity.

2. The phrase "designed for vehicular travel" limits the scope of the agency's duty to maintain the improved portion of the highway. The phrase "vehicular travel" means journeying or going from one place to another in any wheeled carriage, conveyance, or transport, including human-powered, animal-powered, and motorized vehicles. In *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143 (2000), the Michigan Supreme Court concluded that the only part of a highway designed for vehicular travel is the traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel. While the Supreme Court refused to give the term "travel" its broadest possible definition, it did not limit the duty to maintain the improved portion of the highway designed for vehicular travel to that portion of the highway used as a thoroughfare. Rather, the agency with jurisdiction has a duty to maintain in reasonable repair any part of the highway that was specifically designed—that is, planned, purposed, or intended—to support travel by vehicles, even if the lanes were designed as specialized, dual-purpose, or limited-access travel

YONO v MDOT (ON REMAND)

lanes. Therefore, in order to establish that it was entitled to summary disposition notwithstanding that Yono pleaded in avoidance of governmental immunity, the department had to present evidence that, if left unrebutted, would establish that the area of the highway at issue fell outside the improved portion of the highway that was planned, purposed, or intended to support regular travel by vehicles. The department relied on an affidavit submitted by Gary Niemi, an employee of the department, in arguing that the area where Yono fell was not designed for vehicular travel. But Niemi's affidavit presumed that the highway exception to governmental immunity applied only to the portion of the highway designed to sustain the heaviest regular travel. Niemi's presumption in that regard was contrary to the statutory language, rendering his opinion that the parking lanes were not designed for vehicular travel irrelevant. The department's arguments regarding paint markings were also inapposite because one cannot infer the nature of a highway's design from the markings painted on the highway. Vehicles must travel into and out of the parallel parking lanes in order for those lanes to serve their purpose, and it was obvious from the photos submitted by the parties that the designers of M-22 designed the parking lanes, at a minimum, to support limited, albeit regular, vehicular travel beyond that which accompanies the use of the lanes for parking. Because the department did not present any admissible evidence to rebut Yono's allegations that the area of the highway at issue was part of the improved portion of the highway designed for vehicular travel, the department failed to establish that it was entitled to summary disposition under MCR 2.116(C)(7). The trial court did not err when it denied the department's motion for summary disposition.

Affirmed.

1. GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — PLEADING IN AVOIDANCE OF GOVERNMENTAL IMMUNITY.

Under the highway exception to governmental immunity, MCL 691.1402(1), a person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover damages from the governmental agency; the agency's duty keep the highway in reasonable repair extends only to the improved portion of the highway designed for vehicular travel; in order to plead in avoidance of governmental immunity under the highway exception, the plaintiff only has to allege facts sufficient to place the agency on notice that the plaintiff suffered an injury caused by the agency's failure to maintain the highway in reasonable repair and

the condition that caused the plaintiff's injury was located within an area of the improved portion of the highway that was designed for vehicular travel.

2. GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — EXTENT OF THE AGENCY'S DUTY — THE IMPROVED PORTION OF THE HIGHWAY DESIGNED FOR VEHICULAR TRAVEL.

Under the highway exception to governmental immunity, MCL 691.1402(1), a person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover damages from the governmental agency; the agency with jurisdiction has a duty to maintain in reasonable repair any part of the highway that was specifically designed—that is, planned, purposed, or intended—to support travel by vehicles whether those vehicles are human powered, animal powered, or motorized, even if the lanes were designed as specialized, dual-purpose, or limited-access travel lanes; one cannot generally infer the nature of a highway's design from the markings painted on the highway.

*Smith & Johnson, Attorneys, PC* (by *L. Page Graves*), for Helen Yono.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, *Matthew Schneider*, Chief Legal Counsel, and *Michael J. Dittenber*, Assistant Attorney General, for the Department of Transportation.

Amicus Curiae:

*Lacey & Jones LLP* (by *Carson J. Tucker*) for the Michigan Municipal League and the Michigan Townships Association.

ON REMAND

Before: BECKERING, P.J., and BORRELLO and M. J. KELLY, JJ.

M. J. KELLY, J. This case returns to us on remand from our Supreme Court to consider two issues: "(1)

what standard a court should apply in determining as a matter of law whether a portion of highway was 'designed for vehicular travel,' as used in MCL 691.1402(1); and (2) whether the plaintiff has pled sufficient facts to create a genuine issue of material fact under this standard." *Yono v Dep't of Transp*, 495 Mich 982, 983 (2014). In accordance with these instructions, we explain the procedure for evaluating a motion under MCR 2.116(C)(7). We also discuss the minimum requirements for pleading the highway exception to governmental immunity and the nature of the proofs that a governmental entity must establish in order to show that it is entitled to immunity as a matter of law even after a plaintiff has adequately pleaded in avoidance of governmental immunity under the highway exception. After discussing these areas of the law, we examine whether plaintiff, Helen Yono, pleaded in avoidance of governmental immunity and whether defendant, the Department of Transportation, established grounds for dismissing Yono's claim under MCR 2.116(C)(7). For the reasons more fully explained later in this opinion, we conclude the Department failed to properly support its motion under MCR 2.116(C)(7) and, therefore, the trial court did not err when it denied the Department's motion. Accordingly, we again affirm.

## I. BASIC FACTS

As we discussed in more detail in our prior opinion, Yono sued the Department after she fell and was injured while walking to her car, which was parked in that portion of M-22 where parking is permitted. See *Yono v Dep't of Transp*, 299 Mich App 102, 104; 829 NW2d 249 (2012). The Department responded by moving for summary disposition under MCR 2.116(C)(7). The Department supported its motion with evidence that purported to show that the area at issue was not *in fact*

designed for vehicular travel, contrary to Yono's pleadings. It argued that, given this undisputed evidence, it had no obligation under MCL 691.1402(1) to maintain the areas where parking was permitted. *Yono*, 299 Mich App at 104-105. Because it had no duty to maintain those areas, it argued, the trial court had to dismiss Yono's claim as a matter of law. *Id.* at 105. The trial court disagreed and determined that the undisputed evidence showed that the area where parking was permitted was designed for vehicular travel and, on that basis, denied the Department's motion. *Id.* at 105-106.

On appeal to this Court, a majority of the panel hearing this case agreed that the Department failed to establish that it was entitled to governmental immunity as a matter of law. *Id.* at 114. Specifically, after examining the record evidence, the majority concluded that the undisputed evidence showed the portion of M-22 where parking is permitted was designed for regular vehicular travel—even if it was not regularly used as a thoroughfare. *Id.* at 110-114. Consequently, the majority affirmed the trial court's order denying the Department's motion for summary disposition. *Id.* at 115. The Department then appealed to our Supreme Court and, in lieu of granting leave to appeal, the Supreme Court remanded the case back to this Court for additional consideration.

We now examine the proper procedure for considering a motion for summary disposition premised on governmental immunity under MCR 2.116(C)(7).

## II. GOVERNMENTAL IMMUNITY

### A. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc*

*v Gates Performance Engineering, Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). This Court also reviews de novo whether the trial court properly interpreted and applied the applicable statutes and court rules. *Brecht v Hendry*, 297 Mich App 732, 736; 825 NW2d 110 (2012).

### B. ORDER ON REMAND

Our Supreme Court has ordered us to consider "(1) what standard a court should apply in determining as a matter of law whether a portion of highway was 'designed for vehicular travel,' as used in MCL 691.1402(1); and (2) whether the plaintiff has pled sufficient facts to create a genuine issue of material fact under this standard." *Yono*, 495 Mich at 983. Although a trial court may consider a party's pleadings when deciding whether there is a genuine issue of material fact, see MCR 2.116(G)(5), the nonmoving party cannot rely on his or her allegations alone when responding to a properly supported motion arguing there is no genuine issue of material fact. See MCR 2.116(G)(4).[1] The nonmoving party simply cannot plead a genuine issue of material fact into existence. Instead, when a moving party presents evidence that he or she is entitled to immunity by law, the nonmoving party cannot rely on his or her allegations to establish a question of fact; the nonmoving party must respond by presenting evidence sufficient to establish, at the very least, that there is a genuine issue of fact as to the existence of immunity. Accordingly, it is unclear what our Supreme Court

---

[1] We are cognizant that MCR 2.116(G)(4) applies to motions brought under MCR 2.116(C)(10). However, we conclude that the relevant rules applicable to a motion under MCR 2.116(C)(10) apply equally to a factual challenge under MCR 2.116(C)(7). See *Kincaid v Cardwell*, 300 Mich App 513, 537 n 6; 834 NW2d 122 (2013).

meant when it ordered us to consider whether Yono "has pled sufficient facts to create a genuine issue of material fact . . . ." *Yono*, 495 Mich at 983. It may have meant for this Court to consider solely what evidence is necessary to establish whether "the improved portion of the highway" at issue was "designed for vehicular travel," MCL 691.1402(1), or it may have meant that this Court should examine the standard applicable to pleading in avoidance of governmental immunity under MCL 691.1402(1). Therefore, in order to ensure that we have considered everything that our Supreme Court has asked of us, we first consider whether Yono properly pleaded in avoidance of governmental immunity. We then examine the evidence that is sufficient to establish that the condition at issue was in the "improved portion of the highway designed for vehicular travel." MCL 691.1402(1).

### C. MOTIONS UNDER MCR 2.116(C)(7)

A trial court properly dismisses a claim under MCR 2.116(C)(7) when, in relevant part, the claim is barred by "immunity granted by law . . . ." The party moving for summary disposition under MCR 2.116(C)(7) may show that he or she is entitled to immunity granted by law in two distinct ways. First, the moving party may show that immunity is apparent on the face of the plaintiff's pleadings. See MCR 2.116(G)(2) (stating that the moving party may, but is not required, to support a motion under MCR 2.116(C)(7) with affidavits, depositions, admissions, or other documentary evidence). In this sense, the motion is similar to one under MCR 2.116(C)(8). See *Patterson v Kleiman*, 447 Mich 429, 434; 526 NW2d 879 (1994) (noting that the distinction between a motion under MCR 2.116(C)(7) and one under MCR 2.116(C)(8) is that the movant under MCR

2.116(C)(7) may support his or her motion with docu-
mentary evidence that contradicts the allegations in the
plaintiff's complaint). In reviewing a motion under
MCR 2.116(C)(7) that challenges whether the movant is
entitled to immunity on the face of the plaintiff's
pleadings, the trial court must accept all well-pleaded
allegations as true. *Maiden v Rozwood*, 461 Mich 109,
119; 597 NW2d 817 (1999). Similarly, as with a motion
under MCR 2.116(C)(8), the court must construe the
allegations in the light most favorable to the nonmoving
party. *Id*. If it is evident on the face of the allegations,
even when considered in the light most favorable to the
nonmoving party and accepting the allegations as true,
that the movant is entitled to immunity as a matter of
law, the trial court should grant the motion to dismiss
under MCR 2.116(C)(7).

In contrast to a motion under MCR 2.116(C)(8), a
party moving for summary disposition under MCR
2.116(C)(7) is not limited to challenging the facial
validity of the pleadings. See MCR 2.116(G)(5) (provid-
ing that, when considering a motion brought under
MCR 2.116(C)(8), the trial court may only consider the
pleadings); *Patterson*, 447 Mich at 434. Rather, the
movant may establish that, given the undisputed facts
of the case, he or she is entitled to immunity as a matter
of law, notwithstanding the plaintiff's allegations. See
MCR 2.116(G)(5); MCR 2.116(G)(6). Such a challenge is
similar to one under MCR 2.116(C)(10). See *Dextrom v
Wexford Co*, 287 Mich App 406, 430-433; 789 NW2d 211
(2010). And, as with a motion under MCR 2.116(C)(10),
the movant bears the initial burden to show that he or
she is entitled to immunity as a matter of law. See
*Kincaid v Cardwell*, 300 Mich App 513, 522; 834 NW2d
122 (2013). If the movant properly supports the motion
by presenting facts that, if left unrebutted, would show
that there is no genuine issue of material fact that the

movant has immunity, the burden shifts to the nonmoving party to present evidence that establishes a question of fact as to whether the movant is entitled to immunity as a matter of law. *Id*. at 537 n 6. If the trial court determines that there is a question of fact as to whether the movant has immunity, the court must deny the motion. *Dextrom*, 287 Mich App at 431.[2]

### D. PLEADING IN AVOIDANCE OF GOVERNMENTAL IMMUNITY

#### 1. PROCEDURAL POSTURE

Before examining the adequacy of Yono's pleadings, we note that the Department did not move to dismiss Yono's claim on the ground that she failed to plead in avoidance of governmental immunity. Rather, the Department recognized that Yono was relying on the highway exception to governmental immunity, MCL 691.1402(1), and had pleaded that the Department breached its duty under that statute to maintain the improved portion of the highway at issue in reasonable repair. In its motion for summary disposition, the Department focused its argument on the evidence;

---

[2] We note a potential conflict in the manner by which such a dispute should be resolved. In *Dextrom*, the Court held that, when there is a question of fact on a motion for summary disposition under MCR 2.116(C)(7) involving governmental immunity, the factual dispute must be resolved by the trial court at a hearing. *Dextrom*, 287 Mich App at 432. In contrast, the Court in *Kincaid* determined that a question of fact under MCR 2.116(C)(7) involving the application of a statute of limitations must be submitted to the jury. *Kincaid*, 300 Mich App at 523, citing *Tumey v Detroit*, 316 Mich 400, 411; 25 NW2d 571 (1947) ("In the case at bar it cannot be said as a matter of law that plaintiffs' rights of recovery were barred by the statute. Under the proofs the issue was one of fact for the determination of the jury."). Because we conclude the Department failed to establish grounds for relief under MCR 2.116(C)(7), we need not determine the appropriate method for resolving factual disputes under MCR 2.116(C)(7) or whether the manner for resolving such disputes varies depending on the grounds for dismissal asserted in the motion.

specifically, it argued that Yono's claim was barred by immunity because she fell in an area that was—as a matter of undisputed fact—not part of the highway designed for vehicular travel. The Department even conceded that the area of the highway where parking was permitted involved vehicular travel, but argued that the phrase "designed for vehicular travel" should be construed to mean the lanes used as a thoroughfare, as opposed to lanes used for more limited vehicular travel. The Department supported its motion with photographic evidence of the area of the highway at issue and proffered an affidavit wherein an expert opined that the area of the highway where Yono fell was not designed for vehicular travel.

Even on appeal, the Department did not specifically address the sufficiency of Yono's pleadings in its question presented or main argument; it focused its argument on whether the phrase "designed for vehicular travel" means that the only area that it has a duty to maintain in reasonable repair are those portions of the highway actually used as a thoroughfare. The Department only raised the sufficiency of Yono's pleadings as an afterthought in the final paragraph of its brief on appeal. It is for that reason that the majority in our prior opinion limited its discussion to the evidence presented by the parties in support and opposition to the motion for summary disposition. See *Yono*, 299 Mich App at 114 n 4. Despite the fact that the Department failed to properly preserve this issue by contesting the sufficiency of Yono's allegations in its motion before the trial court, see *Bailey v Schaaf (On Remand)*, 304 Mich App 324, 344-346; 852 NW2d 180 (2014), and abandoned the issue on appeal, see *Mitcham v Detroit*, 355 Mich 182, 203; 94 NW2d 388 (1959); *Yono*, 299 Mich App at 114 n 4, we now examine Yono's complaint to determine whether she adequately pleaded in avoidance of governmental immunity.

## 2. THE COMPLAINT

Governmental immunity inheres in governmental agencies as a characteristic of government and, accordingly, there is a presumption that "a governmental agency *is* immune" from suit unless an exception to governmental immunity applies to the facts of the case. *Mack v Detroit*, 467 Mich 186, 201; 649 NW2d 47 (2002). In order to rebut the presumption of immunity, a "party suing a unit of government must plead in avoidance of governmental immunity." *Id.* at 203. The party suing the governmental agency must plead facts that—if true—demonstrate that an exception to governmental immunity applies: "A plaintiff pleads in avoidance of governmental immunity by stating a claim that fits within a statutory exception or by pleading facts that demonstrate that the alleged tort occurred during the exercise or discharge of a nongovernmental or proprietary function." *Id.* at 204.

The present case involves the highway exception to governmental immunity provided under MCL 691.1402(1). The Legislature determined that a "governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel." *Id.* Moreover, a "person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency." *Id.* The agency's duty to keep highways in reasonable repair, however, "extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved

portion of the highway designed for vehicular travel." *Id.* See also *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 171; 615 NW2d 702 (2000) ("[I]f the condition proximately causing injury or property damage is located in the improved portion of the highway designed for vehicular travel, not otherwise expressly excluded, the state or county road commissioners' statutory duty under the highway exception is implicated and a plaintiff is capable of pleading in avoidance of governmental immunity.").

Under Michigan's notice-pleading standard, the primary function of a pleading is to "give notice of the nature of the claim or defense sufficient to permit the opposite party to take a responsive position." *Stanke v State Farm Mut Auto Ins Co*, 200 Mich App 307, 317; 503 NW2d 758 (1993). A party asserting a claim does not have to use any particular formula or special wording in order to properly state his or her claim. Rather, the complaint need only contain a "statement of the facts, without repetition, on which the pleader relies in stating the cause of action, with the specific allegations necessary reasonably to inform the adverse party of the nature of the claims the adverse party is called on to defend[.]" MCR 2.111(B)(1). Consequently, in order to plead in avoidance of governmental immunity under the highway exception, as that exception applies to the Department, Yono only had to allege facts sufficient to place the department on *notice* that she suffered an injury caused by the Department's failure to maintain the highway in reasonable repair and the condition that caused her injury was located within an area of the improved portion of the highway that was designed for vehicular travel.

In her complaint, Yono alleged that she was a pedestrian walking on the improved portion of M-22 when

she fell and suffered an injury. She further alleged that
the Department had exclusive jurisdiction over that
improved portion of the highway and had failed to
properly maintain it, which proximately caused her fall
and injury. Although she did not specifically allege that
she fell in the improved portion "designed for vehicular
travel," she was not required to use any specific "magic
words" in order to plead in avoidance of governmental
immunity. She only needed to allege sufficient facts to
give the Department notice of her theory of recovery,
including notice of the applicable exception to govern-
mental immunity. See *Stanke*, 200 Mich App at 317.
Yono specifically identified the applicable statutory ex-
ception to governmental immunity and correctly iden-
tified the duty that applied to the Department as the
agency with jurisdiction: "[The Department] owed
[Yono] the statutory duty to repair and maintain the
improved portion of M-22 in a condition reasonabl[y]
safe and convenient for *public* travel." Cf. MCL
691.1402(1) ("Each governmental agency having juris-
diction over a highway shall maintain the highway in
reasonable repair so that it is reasonably safe and
convenient for public travel."). That is, she identified
the defect as being in the "improved portion" of the
Highway that the Department had a duty to maintain
and repair under MCL 691.1402(1), which—when read
in light of that statute—necessarily means the im-
proved portion of the highway designed for vehicular
travel. Considering her complaint as a whole and in the
light most favorable to her, Yono alleged sufficient facts
to place the Department on notice that it was her
position that the Department had a statutory duty to
maintain the improved portion of the highway at issue
under the highway exception to governmental immu-
nity and sufficiently identified the location to permit
the Department to take a responsive position as to

whether that portion of the highway fell within the exception. Therefore, Yono's complaint met the minimum requirements for pleading in avoidance of governmental immunity. See *Mack*, 467 Mich at 204.

Even if Yono could only plead in avoidance of governmental immunity by specifically alleging that the defect at issue was in the improved portion of the highway "designed for vehicular travel," as opposed to alleging that it was part of the improved portion that the Department had a duty to maintain, under the facts of this case, that deficiency would not be fatal to her claim. A plaintiff may generally cure defective pleadings by amendment before trial, and leave to amend to correct such deficiencies should be freely granted "when justice so requires." MCR 2.118(A)(2). As our Supreme Court has stated, a trial court's discretion to permit amendment to cure deficiencies under this rule is not a matter of grace, but a right of a litigant seeking to amend in the absence of any apparent or declared reason that would justify denial—such as undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice, or futility of amendment. *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, 659; 213 NW2d 134 (1973). For that reason, a trial court abuses its discretion when it uses its discretion "to obviate a recognized claim or defense." *Id*. Accordingly, even if Michigan courts were to apply a hypertechnical requirement for pleading in avoidance of governmental immunity, a plaintiff could nevertheless survive a motion for summary disposition under MCR 2.116(C)(7) by demonstrating that he or she would be entitled to amend the complaint to cure the deficiency. See *Kincaid*, 300 Mich App at 531.

Although Yono did not specifically allege that the defect at issue was in the improved portion of the highway designed for vehicular travel, she placed the

Department on notice that it was her position that the highway exception to governmental immunity applied under the facts and identified the location of the defect with sufficient precision to allow the Department to respond. Indeed, the Department plainly understood that it was Yono's position that her claim fell under that exception and it immediately challenged her ability to factually support that position. Within the same month that Yono filed her complaint, the Department moved for summary disposition on the ground that the defect at issue was not within the improved portion of the highway designed for vehicular travel. Moreover, it supported its position with evidence and an expert's affidavit. The trial court then held a hearing on the motion and determined that the undisputed evidence established that the defect at issue was within the improved portion of the highway designed for vehicular travel. Under these circumstances, even if the Department had challenged whether Yono pleaded in avoidance of governmental immunity, it would have been patently unjust for the trial court to have denied Yono leave to correct the technical deficiency in her pleadings. See *Ben P Fyke*, 390 Mich at 659. Therefore, that claim of error would not warrant relief.

Yono properly pleaded in avoidance of the Department's governmental immunity. Even if she did not, she would have been entitled to amend her complaint to correct the technical deficiency. The trial court did not err to the extent that it refused to dismiss Yono's claim for failing to plead in avoidance of governmental immunity.

### E. CHALLENGING THE FACTUAL BASIS FOR IMMUNITY

Before the trial court, the Department did not challenge the facial validity of Yono's claim—it challenged her

factual support for the allegation that the condition giving rise to her injury was within the improved portion of the highway designed for vehicular travel. See MCL 691.1402(1). As the moving party, the Department had the initial burden to show that the condition at issue fell outside the improved portion of the highway designed for vehicular travel. See *Kincaid*, 300 Mich App at 522.

The Legislature did not define the phrase "improved portion of the highway designed for vehicular travel" and, for that reason, courts would normally construe the phrase by giving the words their ordinary meaning. MCL 8.3a. A plain reading of MCL 691.1402(1) shows that the Legislature intended to limit the application of the highway exception so that governmental agencies with jurisdiction over highways would not have the same scope of liability for dangerous conditions on their lands as a private premises possessor or landowner would have. To accomplish that goal, the Legislature limited the scope of liability to the improved portions of the highway, as opposed to unimproved portions. Accordingly, even though the highway may include significant portions of unimproved land, the state would have no duty to maintain those unimproved portions. See, e.g., *Kentwood v Sommerdyke Estate*, 458 Mich 642, 665; 581 NW2d 670 (1998) (holding that a highway established under the highway-by-user statute is dedicated to the "full extent of the four-rod width" even if the state does not use or improve the highway to the full width). The Legislature then further limited the duty to maintain the improved portion of the highway in reasonable repair to a specific subset of the improved portion: "the improved portion of the highway designed for vehicular travel." MCL 691.1402(1).

The phrase "designed for vehicular travel" limits the scope of the duty to maintain the improved portion and

the key to that phrase is the word "designed." Something is designed for a particular purpose when it is "[p]lanned, purposed, [or] intended" for that purpose. *The Oxford English Dictionary* (2d ed, 1991). Further, to design something (designed being the past participle of the verb design) means—at least in the context of highway improvements—"[t]o purpose or intend (a thing) *to be* or *do* (something); to mean (a thing) to serve some purpose or fulfil some plan," or to "have in view, [to] contemplate" a particular purpose. *Id*. Thus, the Legislature limited the state's duty to maintain and repair to that portion of the highway that contains improvements that were planned, purposed, or intended to be used for "vehicular travel"—that is, the duty to repair and maintain extends only to those improvements that were intended to serve the purpose or plan of "vehicular travel."[3]

The adjective "vehicular" means "[o]f or pertaining to, associated or connected with, a (wheeled) vehicle," and the word "vehicle" means "[a]ny means of carriage, conveyance, or transport; a receptacle in which anything is placed in order to be moved." *Id*. In the context of a highway, the term "vehicle" will commonly refer to "[a] means of conveyance provided with wheels or runners and used for the carriage of persons or goods; a carriage, cart, wagon, sledge, or similar contrivance." *Id*. The term "travel," finally, means "[t]o make a journey; to go from one place to another; to journey." *Id*. Vehicular travel, then, means journeying or going from one place to another in any wheeled carriage, conveyance, or transport.

---

[3] Placed in its proper context, the statute clearly imposes a duty to maintain in reasonable repair all improvements within the highway that were purposed or intended to support vehicular travel, not just the roadbed.

It is notable that the Legislature used the rather broad term "vehicle" in MCL 691.1402(1) and did not limit that term to motor vehicles or some other subset of vehicles. Giving this word its ordinary meaning, the Legislature plainly intended to impose a duty on governmental agencies to maintain the improved portion of the highway designed for vehicular travel in reasonable repair for all manner of vehicles, not just motor vehicles. As such, a governmental agency ordinarily would have a duty to maintain its highways in reasonable repair so that it is reasonably safe for cyclists as well as motorists. But see *Gregg v State Hwy Dep't*, 435 Mich 307, 312-317; 458 NW2d 619 (1990) (stating—without examining the common meaning of the word "vehicle"—that a bicycle is not a vehicular means of travel because "vehicular travel" refers to travel by motor vehicles), overruled by *Grimes v Dep't of Transp*, 475 Mich 72, 84; 715 NW2d 275 (2006) (characterizing the decision in *Gregg* as flawed because that Court did not construe the statute according to the plain meaning of the words used in the statute); *Roy v Dep't of Transp*, 428 Mich 330, 340; 408 NW2d 783 (1987) (using the definition for "vehicle" found in the Michigan Vehicle Code to show that the term "vehicle," as used in MCL 691.1402(1), does not encompass human-powered vehicles such as bicycles), impliedly overruled in relevant part by *Grimes*, 475 Mich at 85-87 (holding that the Court in *Gregg*, which relied on the definition provided in *Roy*, erred when it used a definition found in the Michigan Vehicle Code to interpret the completely separate statutory provisions found in the governmental tort liability act). The ordinary meaning of the word "vehicle," therefore, is not limited to trucks or cars—it is not even limited to motor vehicles. Rather, the word encompasses every type of wheeled vehicle that can be used to travel from one place to another; it includes

human-powered vehicles (such as bicycles, tricycles, and wheelchairs) and animal-powered vehicles (such as the horse-drawn buggies one finds in Amish country or the horse-drawn carts one finds on Mackinac Island),[4] in addition to the motorized vehicles that are more commonly found along Michigan's highways.[5]

Considering the meaning of the phrase as a whole and in context, were we writing on a clean slate, we would conclude that the phrase "improved portion of the highway designed for vehicular travel" means that portion of the highway that has been improved—as opposed to the unimproved portion—but only to the extent that the improvements were planned, purposed, or intended to allow persons to safely journey or go from place to place by a means of a wheeled carriage, conveyance, or transport. We are not, however, writing on a clean slate.

In *Nawrocki*, our Supreme Court considered the nature of the improvements contemplated by the Legislature when it limited the duty to maintain or repair highways to the "improved portion of the highway designed for vehicular travel" and concluded that the only part of a highway designed for vehicular travel was the " 'travelled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel.' "

---

[4] If "designed for vehicular travel" meant designed for regular travel by motorized vehicles, we would be forced to hold that there are no highways on Mackinac Island.

[5] We do not mean to imply that it is legal for any type of vehicle to travel on any or all highways. The term highway applies to a broad array of streets and roads, which includes some limited access highways. See MCL 691.1401(c) (defining highway to mean "a public highway, road, or street"). Nevertheless, the Legislature did not limit the duty at issue to the improved portion of the highway designed for *legal* vehicular travel or even *contemplated* vehicular travel—it elected to impose a duty premised on whether the improved portion of the highway was designed for vehicular travel *in general*.

*Nawrocki*, 463 Mich at 180, quoting *Scheurman v Dep't of Transp*, 434 Mich 619, 631; 456 NW2d 66 (1990). The "improved portion of the highway designed for vehicular travel," as construed in this way, means only that part of the highway that was designed to physically support the vehicle while traveling—the point where the rubber meets the road, so to speak. The Court returned to and reiterated this limited understanding of the phrase in *Grimes*, 475 Mich 72.

In *Grimes*, our Supreme Court had to determine whether the shoulder of the highway at issue in that case was "designed for vehicular travel" within the meaning of MCL 691.1402(1). *Grimes*, 475 Mich at 88-91. The Court conceded that travel refers to a continuum of activity and that a momentary swerve onto the shoulder of a highway amounts to travel in a limited sense, but it rejected this definition as too broad. *Id.* at 89. The Court noted that there was a distinction between design and contemplated use and,[6] from that, rejected the argument that a shoulder necessarily fell within the definition simply because the design contemplated that it might be used for travel— albeit limited and emergent travel. *Id.* at 90. Instead, it

---

[6] The Court did not discuss the possibility that a governmental agency might have designed a particular surface to support regular vehicular travel even though it did not contemplate that the surface would be immediately used in that way, such as might be the case with a surface designed to accommodate vehicular travel in anticipation of a planned future expansion. Thus, it is unclear how it would address those situations in which the agency designed a highway improvement to fully support vehicular travel, but nevertheless marked the area off as a shoulder for purposes of the immediate future. It also did not address those highways that have a shoulder that was in fact designed to support regular vehicular travel other than motor vehicle travel (such as a shoulder used as a bicycle lane), but which was also designed to serve the emergent need discussed in *Grimes*. As the Court aptly noted, one ought not to conflate purposeful design with contemplated use. *Grimes*, 475 Mich at 90.

stated that the term "travel" excludes "the shoulder"[7] and then went a step further and held "that only the travel lanes of a highway are subject to the duty of repair and maintenance specified in MCL 691.1402(1)." *Id.*

As the majority recognized in this Court's prior opinion, "while our Supreme Court refused to give the term 'travel' its broadest possible definition, it also did not narrow it to exclude specialized, dual-purpose, or limited-access travel lanes." *Yono,* 299 Mich App at 110, citing *Grimes,* 475 Mich at 89-91. The majority rejected the Department's attempt to give the term "travel" its narrowest possible definition—namely, to limit the term to "that portion of the highway that is mainly used for travel." *Id.* at 111. Although we are no longer free to give MCL 691.1402(1) its ordinary meaning, we continue to believe that our Supreme Court's construction of the phrase "improved portion of the highway designed for vehicular travel," did not limit the State's duty to maintain to only that portion of the highway that is used as the main or primary travel lane—stated another way, our Supreme Court did not limit the duty to that portion of the highway used as a thoroughfare. Rather, the Department continues to have a duty to maintain in reasonable repair any part of the highway that was specifically designed—that is, planned, purposed, or intended—to support travel by vehicles (manpowered, animal-powered, or motorized), even if the lanes were designed as "specialized, dual-purpose, or limited-access travel lanes." *Yono,* 299 Mich App at 110. Therefore, in order to establish that it was entitled to

---

[7] The Court apparently determined on the basis of the design of the shoulder at issue in *Grimes,* that no shoulders, without regard to the fact that the design might vary from one highway to another, are designed for vehicular travel. See *Grimes,* 475 Mich at 91.

summary disposition notwithstanding that Yono pleaded in avoidance of governmental immunity, the Department had to present evidence that, if left unrebutted, would establish that the area of the highway at issue fell outside the improved portion of the highway that was planned, purposed, or intended to support regular travel by vehicles.

In its brief in support of its motion for summary disposition, the Department attached photos that identified the specific defect at issue and also generally demonstrated the physical characteristics of the highway at issue. But it did not rely on those photos as supporting an inference that the highway must not have been designed for vehicular travel. Instead, the Department relied exclusively on an affidavit by Gary R. Niemi to establish that the section of the highway where Yono fell was not designed for vehicular travel. Unfortunately for the Department, Niemi's averments did not establish that the area at issue fell outside the improved portion of the highway designed for vehicular travel.

Niemi averred that he was and remains a developmental engineer with the Department and that his duties include "managing designs on highway and bridge reconstruction projects." He further averred that he researched the highway and inspected it. He then described the highway as having a northbound lane, a southbound lane, and two parallel parking lanes. He then asserted that the portion of the highway that was "designed for through traffic" measures 11 feet on either side of the center line of the highway. He explained that 11 feet meets the Department's standards as well as federal standards. He then asserted that everything outside the 22 feet in the center of the highway was either a buffer zone or a parallel parking

lane and then concluded, without stating how he reached this conclusion, that parallel parking lanes are not "designed for vehicular traffic."

Niemi never averred that he participated in or otherwise had knowledge of the actual design of the particular section of M-22 at issue in this case and, likely for that reason, was unable to state whether the surface of the highway outside the 11 feet on either side of the center line was actually designed—that is, planned, purposed, or intended—to support vehicular travel. Rather, his affidavit assumes, contrary to our construction of the statute at issue, that the statute applies only to that portion of the highway designed to sustain the heaviest regular travel. But as we have been at pains to explain in this opinion and our prior opinion, the Legislature did not limit the state's duty to repair and maintain highways to the improved portion of the highway designed as a thoroughfare—it limited the duty to the "improved portion of the highway designed for *vehicular travel*"—any vehicular travel, not just the heaviest, most continuous, or fastest vehicular travel. MCL 691.1402(1) (emphasis added). Therefore, Niemi's opinion that the statute applies only to the center-most portion of the highway at issue is irrelevant.[8]

Similarly, while he asserted that parallel parking lanes are not designed for vehicular travel, Niemi did not explain the basis for that assertion and it appears to follow from his erroneous understanding that only the most heavily trafficked portions of the highway are "designed for vehicular travel" within the meaning of

---

[8] It is for that reason that we disregarded the conclusions from both experts' affidavits. See *Yono*, 299 Mich App at 114 n 3 ("When the facts concerning the physical attributes [of the highway] are not in dispute, it is for the court to decide whether the improvement at issue was designed for vehicular travel.").

MCL 691.1402(1). It is, however, abundantly clear that vehicles must travel into and out of parallel parking lanes in order for those lanes to serve their purpose and it also obvious from the photos submitted by the parties that the designers of M-22, at minimum, must have designed the parallel parking lanes at issue to support limited, albeit regular, vehicular travel beyond that which accompanies the use of the lanes for parking. Moreover, as we explained in our prior opinion, a governmental entity can design a highway to include surface improvements that are outside the center lanes designed to serve as the primary thoroughfare, but that are nevertheless unequivocally designed to support intermittent, but regular, vehicular travel; these include "left-turn lanes, merge lanes, on- and off- ramps, right-turn lanes, lanes designed to permit vehicles to access the opposite side of a divided highway, such as median U-turn lanes and emergency turn-arounds, or even the excess width provided on rural highways to permit drivers to proceed around vehicles that are waiting to turn left." *Yono*, 299 Mich App at 110. Consequently, Niemi's affidavit failed to establish that the area of M-22 at issue fell, contrary to Yono's allegations, outside the improved portion of the highway designed for vehicular travel.

We also reject the Department's repeated contention that the paint markings used on a highway permit an inference concerning a highway's actual design. Paint markings might permit one to infer how the governmental entity with jurisdiction over the highway intended the highway to be used at the point in time when the paint was applied, but it does not permit one to infer anything about its actual design. A governmental entity might have designed a particular highway to support vehicular travel for its full width, but might have later decided to limit the traffic to a narrow portion in the

center of the highway for safety reasons or even to facilitate parking for businesses. In such a case, the governmental entity's decision to paint markings on the highway does not alter the fact that the highway was actually designed for vehicular travel over its full width. Indeed, in the case of median U-turn lanes, as any ordinary driver can attest, the width of the U-turn lane is frequently limited to a single lane by painted hash marks, but such lanes evidently include the extra width to allow very long vehicles (such as semitrailers) to use the U-turn—that is, the extra width of the lane was plainly designed for vehicular travel even though the paint would suggest otherwise. One can imagine an endless array of similar circumstances when the paint markings on the highway do not correspond to the actual design. Accordingly, the Department's arguments premised on the paint markings are inapposite; in the absence of specific evidence connecting the design with the proposed markings, one simply cannot infer the nature of a highway's design from the markings painted on the highway.

Because the Department did not present any admissible evidence to rebut Yono's allegations that the area of the highway at issue was part of the improved portion of the highway designed for vehicular travel, the Department failed to establish that it was entitled to summary disposition under MCR 2.116(C)(7). Indeed, as we noted in our prior opinion, the only admissible evidence submitted by the parties actually supported an inference that the lanes at issue were, in fact, designed for vehicular travel. See *Yono*, 299 Mich App at 114. Because the Department failed to contradict Yono's allegations by presenting evidence sufficient to establish that the area of M-22 at issue here fell outside the improved portion of the highway designed for vehicular

travel, the trial court did not err when it denied the Department's motion for summary disposition under MCR 2.116(C)(7).[9]

### III. CONCLUSION

Yono properly pleaded in avoidance of governmental immunity. Therefore, the Department was not entitled to have her complaint dismissed under MCR 2.116(C)(7) for failing to plead in avoidance of governmental immunity. Likewise, because the Department failed to present any admissible evidence that the area of M-22 at issue fell outside the improved portion of the highway designed for vehicular travel, the trial court did not err when it denied the Department's motion.

Affirmed. There being an important question of public policy, we again order that neither party may tax costs. MCR 7.219(A).

BECKERING, P.J., and BORRELLO, J., concurred with M. J. KELLY, J.

---

[9] Nothing in this opinion should be understood to preclude the Department from making a properly supported motion for summary disposition at some later point.