# STATE OF MICHIGAN

# COURT OF APPEALS

YVETTE GENTRY,

       Plaintiff-Appellant,

v

SAFECO INSURANCE,

       Defendant-Appellee.

UNPUBLISHED
October 11, 2016

No. 327862
Genesee Circuit Court
LC No. 14-102943-NF

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

In this suit to recover for injuries sustained in an automobile accident, plaintiff, Yvette Gentry, appeals by right the trial court's order granting the motion for summary disposition by defendant, Safeco Insurance. On appeal, we must determine whether the trial court erred when it determined that Gentry failed to establish a genuine issue of material fact concerning whether the May 2012 automobile accident affected her general ability to lead her normal life. Because we conclude that the trial court did not err when it made that determination, we affirm.

Gentry argues that the trial court erred because she presented evidence that the accident aggravated her preexisting injuries, which in turn affected her ability to lead her normal life. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Latham v Barton Malow Co*, 480 Mich 105, 111; 746 NW2d 868 (2008). Although Safeco moved for summary disposition under MCR 2.116(C)(7) and MCR 2.116(C)(10), the trial court considered documentation beyond the pleadings; accordingly, we review the motion under the standards applicable to motion brought under MCR 2.116(C)(10). See *Yono v Dep't of Transportation (On Remand)*, 306 Mich App 671, 679-680; 858 NW2d 128 (2014), reversed on other grounds ___ Mich ___ (2016).

A motion under MCR 2.116(C)(10) tests the factual support for a claim, *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004), and should be granted as a matter of law when "there is no genuine issue as to any material fact," MCR 2.116(C)(10). A genuine issue of material fact exists when, after viewing the evidence in a light most favorable to the nonmoving party, reasonable minds could differ on the issue. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). When reviewing a motion brought under MCR 2.116(C)(10), we review the pleadings, affidavits, depositions, admissions, and other evidence submitted by the parties in a light most favorable to the nonmoving party. *Walsh*, 263 Mich App at 621.

-1-

"Uninsured motorist coverage is optional—it is not compulsory coverage mandated by the no-fault act." *Rory v Continental Ins Co*, 473 Mich 457, 465; 703 NW2d 23 (2005). Thus, "the policy language governs the coverage and is subject to the rules of contract interpretation." *Scott v Farmers Ins Exchange*, 266 Mich App 557, 561; 702 NW2d 681 (2005). Gentry's policy provided, in relevant part: "We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** . . . because of **bodily injury**." Because "[u]ninsured motorist insurance permits an injured motorist to obtain coverage from his or her own insurance company to the extent that a third-party claim would be permitted against the uninsured at-fault driver," Gentry may obtain uninsured motorist benefits from Safeco only if she could make a third-party claim against the uninsured at-fault party. See *Rory*, 473 Mich at 465. In order to show that she could make a third-party claim, Gentry must establish that she suffered a threshold injury within the meaning of MCL 500.3135.

Generally, under the no-fault act, tort liability is limited for noneconomic losses, but there are several statutory exceptions. MCL 500.3135; *McCormick v Carrier*, 487 Mich 180, 189; 795 NW2d 517 (2010). "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement." MCL 500.3135(1). A "serious impairment of body function" is "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life." MCL 500.3135(5). The Michigan Supreme Court, in *McCormick*, promulgated a three part test to determine whether a person suffered a serious impairment of body function; the person asserting the claim must established that he or she suffered "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life." *McCormick*, 487 Mich at 195.

In this case, the parties dispute whether Gentry established the third criteria—namely, whether the May 2012 accident caused an injury that affected her general ability to lead her normal life. An impairment affects a person's general ability to lead his or her normal life if it has "an influence on some of the person's capacity to live in his or her normal manner of living." *Id*. at 202. In order to determine whether the impairment in question has affected a person's ability to lead a normal life requires a comparison of the person's life before and after the incident in question. *Id*. This is a subjective, case specific inquiry, which does not require a specific temporal showing or a "quantitative minimum as to the percentage of a person's normal manner of living that must be affected." *Id*. at 203. Rather, there must be evidence presented showing "some of the person's *ability* to live in his or her normal manner of living has been affected, not that some of the person's normal manner of living has itself been affected." *Id*. at 202. This showing merely requires that the "person's general ability to lead his or her life has been *affected*, not destroyed." *Id*.

The trial court properly compared Gentry's life before the accident at issue to her life after the accident and determined that Gentry failed to present evidence creating a genuine issue of material fact that her injuries arising from the May 2012 accident affected her general ability to lead her normal life. Before the May 2012 accident, Gentry had been involved in another rear-end collision in March 2012. She sustained injuries in the March 2012 accident, which prompted her to seek pain treatment from Michigan Pain and Rehab and she had also visited a chiropractor at least once after the March 2012 accident, but "nothing helped" the pain. In fact,

-2-

according to Gentry, she believed that her condition did not improve at all before the May 2012 accident. Moreover, she was still receiving regular treatment for her injuries arising from the March 2012 accident when the May 2012 accident occurred.

In addition to Gentry's testimony regarding her ongoing pain treatment, Gentry testified that she had not worked since 2008, she was "a very private person," and did not like "a lot of people." In explaining how her injuries arising out of the first accident in March 2012 affected her normal living, she described her normal day as mostly staying at home and watching television. She did not claim to work, did not pursue a hobby, and did not go on vacations because she could not afford them.

When questioned whether her limitations and daily activities had changed after the May 2012 accident, Gentry conceded that her limitations and life remained the same. Additionally, the records from Gentry's visits to the Michigan Pain and Rehab show that her pain remained unchanged. More specifically, the records show that Gentry reported that her pain scale ranged from five to six both before and after the accident at issue. Although Gentry stated that she "couldn't do anything after the second accident," she did not testify as to what exactly she could not do. More specifically, she failed to present any evidence that she could no longer care for herself, watch television, or run errands after the May 2012 accident. Even if Gentry had some increased pain after the most recent accident, she failed to establish how that pain affected her general ability to lead her normal life.

Gentry did not present evidence sufficient to establish a genuine issue of fact as to whether the May 2012 accident affected her general ability to lead her normal life. MCL 500.3135(1), (5). Thus, she failed to show that there was a question of fact as to whether she suffered damages that she would be legally entitled to recover from the uninsured motorist and, for that reason, Safeco was entitled to summary disposition.

The trial court did not err when it granted Safeco's motion and dismissed Gentry's claim.

Affirmed.

/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly

-3-